Francis Rick FERRI, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, Defendant.

Civ. A. No. 81–317.

United States District Court,
W.D. Pennsylvania.

Aug. 24, 1983.

John R. Banke, Pittsburgh, Pa., for plaintiff.

Asst. U.S. Atty. Joel B. Strauss, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiff, Francis Rick Ferri, brings this action for injunctive relief against defendant, the United States Department of Justice, pursuant to the Freedom of Information Act (hereinafter referred to as "FOIA"), 5 U.S.C. § 552(a), *et seq.* This Court is vested with jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B). Plaintiff was previously prosecuted and convicted in this Court and now seeks to compel the production of information concerning that prosecution and conviction. Specifically, plaintiff requests access to information concerning himself; the prosecuting attorney, Thomas Crawford; and witnesses, Herbert Wagner (Charles Herbert Wagner) and Lynn Dunn. In his complaint, the plaintiff alleges that he has exhausted the available administrative remedies in an attempt to secure the aforesaid information. The government claims that certain of the requested documents are exempt from disclosure and has filed *Vaughn* affidavits and indices.[1] After filing the Vaughn affidavits and indices, the government moved for summary judgment, alleging that there is no genuine issue as to any material fact presented by the action and that the government is entitled to judgment as a matter of law. By Opinion and Order of September 17, 1982 (*Ferri v. United States Department of Justice*, CA 81–317 (docket entry No. 26)), this Court denied said motion because the government did not follow the applicable procedure when claiming an exemption by supplying the original copies of the documents, for which they were claiming exemption, for Court review.[2] *See Lame v. United States Department of Justice*, 654 F.2d 917, 922, 929 (3d Cir. 1981). The government has supplied the Court with the missing documents and has renewed its motion for summary judgment. For the reasons set forth below, the Court hereby grants the government's renewed motion for summary judgment.

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] Fed.R.Civ.P. 56(c). The Third Circuit has clearly stated that summary judgment is warranted only upon a clear showing that no genuine issue of fact exists and that the law clearly favors summary judgment based on those facts. *Ely v. Halls Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978). These requirements guide the Court in its review of the government's motion.

The FOIA was promulgated to further the belief that "an informed electorate is vital to the proper operation of a democracy." Sen.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), *reprinted in* FOIA Source Book: Legislative Materials, Cases, Arti-

---

**1.** In the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1979), the District of Columbia Circuit developed FOIA procedures designed to allow informed adversial argument, promote efficient judicial review at both the trial and appellate levels, and discourage conclusory claims of exemption. In the ordinary case, the agency must provide a detailed public justification for its claims of exemption. This justification must be accompanied by an index that would correlate statements made in the government's refusal justification with the actual portions of the document. The Third Circuit adopted the *Vaughn* procedures in the case of *Ferri v. Bell*, 645 F.2d 1213 (3d Cir.1981).

**2.** The Court did not address the merits of the claimed exemptions or sufficiency of the affidavits and indices due to the procedural defect.

**3.** It should be noted at this point that through its written Order of October 15, 1981 (docket entry No. 18) and at the status conference held on December 11, 1981, the Court instructed plaintiff to file responses to defendant's motion for leave to file affidavits and motion for summary judgment and any affidavits deemed necessary. The plaintiff filed a brief on the summary judgment motion, but did not file any response or affidavit on the record. As will be discussed *infra,* this absence of record entries for the plaintiff is detrimental to his case. Although the plaintiff has not produced any materials of record, the Court must still review the defendant's affidavits and indices to ascertain if it has sustained its burden, with regard to the exemptions, under 5 U.S.C. § 552(a)(4)(B).

cles 38 (1974). "The Act's central provision instructs agencies, upon request, to release promptly responsive records in their possession, subject to nine specific exemptions." *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 974 (3d Cir.1981) (footnotes omitted). The exemptions are set forth in 5 U.S.C. § 552(b)(1)–(9). These exemptions, if properly established, provide the government with protection. The FOIA places the burden of establishing an exemption upon the governmental agency involved. *Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir.1981); *Coastal States Gas Corp.*, 644 F.2d at 974. If the agency has failed to release the requested information by claiming an exemption or for other reasons, and if the administrative appeals have been exhausted, the individual seeking disclosure can obtain review of the agency's denial in a federal district court pursuant to 5 U.S.C. § 552(a)(4)(B).[4] That is exactly how the present issue has come before this Court.[5]

The government does assert exemptions in this case as follows: (1) exemptions pursuant to 5 U.S.C. § 552(b)(2) to withhold information related solely to the internal personnel rules and practices of the agency; (2) exemptions pursuant to 5 U.S.C. § 552(b)(3) and Fed.R.Crim.P. 6(e) for grand jury material; (3) exemptions pursuant to 5 U.S.C. § 552(b)(5) to withhold inter-agency or intra-agency memorandums; (4) exemptions pursuant 5 U.S.C. § 552(b)(6) to withhold personnel and medical files, the disclosure of which would constitute an unwarranted invasion of privacy; (5) exemptions pursuant to 5 U.S.C. § 552(b)(7)(C) to withhold investigatory records of a law enforcement agency, the disclosure of which would constitute an unwarranted invasion of privacy; (6) exemptions pursuant to 5 U.S.C. § 552(b)(7)(D) to withhold information in order to protect confidential sources of information; and (7) exemptions pursuant to 5 U.S.C. § 552(b)(7)(F) to withhold investigatory records of a law enforcement agency, the disclosure of which would endanger the life or safety of law enforcement personnel.

If an exemption is claimed by the government, the Court must follow a certain procedure which originated with the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1979).[6] The Third Circuit adopted the *Vaughn* procedures in *Ferri*, 645 F.2d at 1222, and succinctly summarized the appropriate steps in that procedure in the *Lame* case. 654 F.2d at 921–922.

In *Lame*, the Third Circuit stated that, "[i]n the ordinary case, the agency must provide a detailed public justification for its claims of exemption. This justification must be accompanied by an index that 'would correlate statements made in the government's refusal justification with the actual portions of the document.'" *Id.* at 921 (quoting *Vaughn*, 484 F.2d at 827). The filing of the *Vaughn* affidavits and indices serves to narrow the disputed is-

---

**4.** Title 5 U.S.C. § 552(a)(4)(B) provides as follows: "On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its actions."

**5.** The plaintiff requested the information from the Justice Department and the Federal Bureau of Investigation by three letters. *See* Answer, exhibits A–C (docket entry No. 4). The agencies denied certain requests. *See* Complaint, exhibits A–C (docket entry No. 1).

**6.** The *Vaughn* Court noted that secret information is, by definition, unknown to the party seeking disclosure. The lack of knowledge by one side serves to distort the traditional adversary nature of the legal system, which assumes that the facts in dispute are equally available to both sides. The procedure developed by the *Vaughn* Court is intended to offset this inequity to the requesting party. *See Vaughn*, 484 F.2d at 823–824.

sues and permits a reasonable disposition by the district court. *Lame*, 654 F.2d at 922. In certain unusual cases, the governmental agency may not believe that it is proper to file a detailed *Vaughn* index because such an index "could reveal the very information that the agency claims is protected from the disclosure." *Id.* at 921. In such cases, the agency is still required to file an affidavit which explains the basis for the claimed exemption. *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1113 (D.C.Cir.1976). Although a *Phillippi*-type response does not provide the requested information or *Vaughn* index, it does serve to reveal to the requesting party, and to the Court, the basis upon which the government is resisting disclosure; the requesting party is then in a position to contest the government's theory. In both the ordinary-type case, in which a *Vaughn* index is filed, and the *Phillippi*-type case, in which only a public affidavit is filed, "in camera affidavits and submissions are authorized and the district court may resort to them in arriving at its ultimate determination."[7] *Lame*, 654 F.2d at 922. Finally, as evident from the Court's previous Opinion on summary judgment in this case, the government must give the Court an opportunity to review the documents which it claims exemption for. *Id.* at 922, 927.

As stated, the government has now produced the documents for which it claims exemptions, and the case is in a proper procedural posture that permits discussion of the merits of the summary judgment motion. To facilitate orderly discussion of the motion, the court discusses the re-quests for information separately in the following fashion: (1) requests relating to grand jury material; (2) requests relating to Herbert Wagner (Charles Herbert Wagner); (3) requests relating to Lynn Dunn; and (4) requests relating to Thomas Crawford and the plaintiff.

### 1. Grand Jury Material

The record reveals that over 6,000 pages of grand jury testimony were located in connection with plaintiff's request. Newett Affidavit, p. 5 (docket entry No. 15).[8] The government has refused to release this information to the plaintiff, claiming that it is exempt under 5 U.S.C. § 552(b)(3),[9] which exempts those materials protected from disclosure by statute. Specifically, the government claims that Fed.R.Crim.P. 6(e) precludes disclosure of grand jury materials and that Rule 6(e) is a statute included within the protection of § 552(b)(3). This contention is supported by the case of *Fund for Constitutional Government v. National Archives*, 656 F.2d 856, 868 (D.C. Cir.1981) (cited with approval by the Third Circuit in *In Re Grand Jury Matter*, 682 F.2d 61, 64 n. 5 (1982)). In that case, the District of Columbia Circuit specifically addressed the issue of whether Rule 6(e) is a statute for purposes of § 552(b)(3). The Court held that it is such a statute, stating that "Congress, by statute, enacted a modified version of Rule 6(e) in substantially its present form." *Fund for Constitutional Government*, 656 F.2d at 867. On this basis, the Court concluded that the "[r]ules ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3." *Id.* at 868.

---

7. If an agency is unable to publicly articulate the specific disclosure for individual safety or other such reasons, then in-camera review of a more detailed affidavit may be resorted to. *Ferri*, 645 F.2d at 1224. Although in-camera inspection should not be routinely ordered, it has been endorsed by the United States Supreme Court as a workable compromise. *Department of Air Force v. Rose*, 425 U.S. 352, 381, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 (1976).

8. Although the Newett affidavit indicates that the grand jury material is associated with plaintiff's request for information concerning himself and his prosecution which is discussed *infra*, the Court deems it appropriate to discuss this matter in a separate section.

9. Title 5 U.S.C. § 552(b)(3) provides as follows: "(b) This section does not apply to matters that are—... (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; ...."

■ This Court does acknowledge that Rule 6(e) provides for certain exceptions [10] for disclosure, but there is no claim by the defendant that any of those exceptions may apply here. As Justice Powell stated in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979):

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Id.* at 222, 99 S.Ct. at 1674. There has been no such showing here. In fact, the plaintiff concedes that the material is exempt; his only contention is that he is entitled to an indexing of the grand jury materials. The Court does not agree with plaintiff's contention. The *Vaughn* Court developed the indexing and affidavit procedure as a means of promoting informed adversial argument and testing the government's exemption claim. Since transcripts of grand jury testimony are clearly exempt under Rule 6(e) and § 552(b)(3) and since the defendant makes no allegation with respect to the Rule 6(e) exceptions, the Court sees no reason for the government to produce an indexing of the transcripts.

### 2. Wagner Request

As stated, plaintiff seeks information concerning Herbert Wagner (Charles Herbert Wagner) (hereinafter referred to as "Wagner"), who was a witness at plaintiff's trial. Specifically, plaintiff requested Wagner's FBI "rap" sheet and other data that the FBI maintains on Wagner. Plaintiff's request identified Wagner as "one Herbert Wagner, (Charles Herbert Wagner), who in 1975 resided in Harrisburg, Pa., and was a witness for the government in *U.S. of A. v. Ferri*, Cr. No. 74–277 (W.D.Pa.) in February 1975." Answer, exhibit B (docket entry No. 4).

■ The FBI informed the plaintiff, by letter of August 8, 1980, that, based on the request, it lacked sufficient information to determine which of the more than one hundred Herbert Wagner references may be identifiable with plaintiff's request. The FBI requested, in the August 8 letter, that plaintiff produce additional identifying material, such as Wagner's date of birth, place of birth, prior addresses, and current address, if possible. This position was again stated to the plaintiff by letter of September 14, 1981, from the United States Attorney for the Western District of Pennsylvania to plaintiff's counsel. Defendant's motion for summary judgment, exhibit B (docket entry No. 21). The plaintiff never provided, or attempted to provide, any additional information, and this requires an award of summary judgment in favor of the defendant with respect to this request.

To explain this decision, the Court first refers to the affidavit (docket entry No. 16) of Tom D. King, FBI special agent who

---

10. Fed.R.Crim.P. 6(e)(3) provides for exceptions as follows: "(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—(i) an attorney for the government for use in the performance of such attorney's duty; and (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law. (B) Any person to whom matters are disclosed, under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made. (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct."

serves in a supervisory capacity to the Freedom of Information-Privacy Acts section at FBI central headquarters in Washington, D.C. That affidavit explains the FBI central records system and general indices as well as the search procedures used to locate records. King's affidavit reveals that access to the system is afforded by general indices, arranged in alphabetical order and consisting of approximately 60 million index cards on various subject matters, including names of individuals. The index cards fall into two general categories as follows: (1) "main" index cards and (2) "see" index cards. A main index card carries the name of the individual, organization, or activity which is the main subject of a file kept in the system, while a see index card contains only a mention or reference to an individual, organization, or activity. *See* Section II of King affidavit (docket entry No. 16).

The affidavit further explains that once a search is requested under the FOIA, the FBI searches both the active and inactive indices to the central records system. The Bureau restricts its search to main files and certain see files considered to be main-file equivalents. The initial requests are handled in this fashion until such time as the requester is able to focus the search by narrowing his request or providing more specific information. *See* Section III of King affidavit (docket entry No. 16).

With this background information in mind, the Court sets forth paragraph 21(B) of the King affidavit as follows:

Indices search on the name Charles Herbert Wagner and Herbert Wagner reflected 298 file numbers, both "main" and "see" references, from both the Active and Inactive Indices. Based on the identifying data provided by plaintiff, the FBI was unable to determine which, if any, of these references were the subject of the plaintiff's request. Also, based on the identifying data provided by plaintiff, the FBI was unable to conduct a search of the indices to the Identification Division system of records for a "rap sheet"

on Mr. Wagner. To conduct such a search the FBI must have identifying data, to include satisfactory proof of identity, which shall consist of name, date and place of birth and/or a set of rolled-inked fingerprint impressions for the individual on whom the record is sought. Plaintiff has not provide [sic] such data and therefore no search can be conducted by Identification Division regarding any Identification record of Mr. Wagner should one exist.

There is nothing in the record to counter Mr. King's statements and no indication that plaintiff ever attempted to supply any additional information after his initial letter request. In light of these facts and the cases discussed below, summary judgment in favor of defendant is warranted.

In *Grachow v. United States Customs Service*, 504 F.Supp. 632 (D.D.C.1980), plaintiff instituted suit under the Privacy Act, 5 U.S.C. § 552a, to recover monetary damages for an alleged unlawful denial of access to records pertaining to him. In that case, the Court addressed the issue of whether a governmental agency is required to produce documents that it cannot readily locate without more specific identifying information from the requesting party. In resolving this issue in favor of the government, the Court stated that access under the Privacy Act is limited to records that can be retrieved by certain identifying marks used by the agency, and the agency is not required to search each and every record it maintains in order to discover material that might fulfill a request. *Id.* at 634. In the final analysis, the *Grachow* Court concluded that Congress intended only for records to be supplied to a requesting party to the extent that the records could be retrieved from the records system through the use of identifying marks; any greater requirement would place an enormous burden on agencies that maintain records. *Id.* at 636. Although the instant action involves the FOIA rather than the Privacy Act,[11] the Court believes that the

---

11. The Court recognizes that the Privacy Act . differs from the FOIA, in that under the Privacy

principles espoused in *Grachow* apply equally here.

Moreover, the Ninth Circuit has stated that a description of requested information under the FOIA is sufficient " 'if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.' " *Marks v. United States Department of Justice*, 578 F.2d 261, 263 (1978) (cited with approval for this proposition in *Ferri*, 645 F.2d at 1220). "[A]s the statutory language indicates, if the administrative burden imposed upon an agency by a request is 'unreasonable,' ... courts may in their discretion decline to order disclosure." *Ferri*, 645 F.2d at 1220. Here, the King affidavit clearly indicates that, because of plaintiff's failure to supply sufficient identifying information, the Wagner information cannot be retrieved with a reasonable amount of effort, which necessarily implies that it would place a heavy burden on the agency here.[12] The Court must afford substantial weight to such affidavits, especially when uncontroverted as is the case here (*see Lesar v. United States Department of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980)), and viewing the Wagner request in this light, the Court finds that there is no outstanding issue of material fact and that defendant is entitled to summary judgment on this issue as a matter of law.[13]

### 3. Dunn Request

The Court next addresses plaintiff's request for information concerning Lynn Dunn (hereinafter referred to as "Dunn"), another witness in plaintiff's prosecution and conviction. Plaintiff's request to the Justice Department and the FBI stated as follows:

Additionally, I am requesting access to all records maintained in your agency with respect to one Lynn Dunn, who too was a government witness in the *U.S.A. v. Ferri, supra,* cause.

Answer, exhibit B (docket entry No. 4). With respect to this request, the same King affidavit discussed above is again instructive.

Paragraph 21(A) of the King affidavit explains that 22 file numbers, including main and see references, were located in connection with Dunn. The FBI was not able to ascertain whether any of the located files complied with the request based on the information supplied by plaintiff; however, plaintiff had previously requested information concerning Dunn in another FOIA case (*see Ferri*, 645 F.2d at 1217), and the FBI was aware of that request. Using the information from the previous case, the FBI conducted another search of its records.[14] King's affidavit indicates that "[t]o further confirm or deny on the public record whether any of these references are in fact identifiable to the Mr.

Act one is seeking information concerning himself, while under the FOIA one may seek information regarding a third party, and that it is much easier for a requesting party to locate and provide information concerning himself under the Privacy Act and not as easy to provide information concerning another. Despite these differences, the Court still believes that the principles set forth in *Grachow*, with regard to an agency's obligation to locate records under the Privacy Act, applies to this FOIA action.

12. It should be noted that in his affidavit King identifies himself as a professional in the FBI with a good working knowledge of both the FBI records system and FOIA requests. Thus, he is a proper party to make a comment as to the reasonableness of locating records.

13. As a postscript to this section, the Court adds that in making its decision on the Wagner request, it also considered that the government

did not exhibit any bad faith with respect to this request. *See Marks*, 578 F.2d 263. In fact, to the contrary, the government wrote two letters to the plaintiff (discussed in text *supra* ) with respect to this request, informing him that additional information was necessary to process the request. This evidences that the government was willing to cooperate with the request if the proper information was supplied. Instead of attempting to locate and supply the additional information, the plaintiff apparently took the position that the government could produce the information based on the information provided in the original request, which is obviously not reasonably possible.

14. This again attests to the good faith of the government referred to in footnote 13, *supra.*

Dunn on whom plaintiff seeks information would be an unwarranted invasion of Mr. Dunn's privacy" because the disclosure could lead to "speculation that Mr. Dunn may have been the subject of an FBI investigation, may have cooperated with the FBI during the course of an investigation or may have been associated in some way with the subject of an FBI investigation." King affidavit, ¶ 21(A) (docket entry No. 16). To prevent such public disclosure, King has filed a supplemental in-camera affidavit. The use of an in-camera affidavit rather than a public *Vaughn* index here is appropriate because if the government admitted to possessing the information, it would be revealing the very information that it claims to be exempt. *See Lame*, 654 F.2d at 927. After careful review of the in-camera affidavit, the Court finds that the government is entitled to an exemption with respect to the information contained therein pursuant to 5 U.S.C. § 552(b)(7)(C)[15] (revelation of investigatory records that would constitute unwarranted invasion of personal privacy).

■ It is important to note that § 552(b)(7)(C)'s protection is not absolute. Rather, the Court must perform "a de novo balancing test, weighing the privacy interest and the extent to which it is invaded, on the one hand, against the public benefit that would result from disclosure, on the other." *Ferri*, 645 F.2d at 1217. Section 552(b)(7)(C):

> protects against the disclosure of the identity of individuals where such disclosure would likely cause embarrassment or harassment to the third party, either because sensitive, derogatory, or intimate personal information about him or her is contained in the file *or because the person's cooperation with an FBI investigation would itself prove embarrassing*.

*Docal v. Bennsinger*, 543 F.Supp. 38, 45 (M.D.Pa.1981) (emphasis added) (quoting

*Lamont v. Department of Justice*, 475 F.Supp. 761, 766–767 (S.D.N.Y.1979)). After reviewing the in-camera affidavit and the original documents, the Court finds that the material does fall within § 552(b)(7)(C). However, the inquiry does not stop with this determination because, as noted above, § 552(b)(7)(C) protection is not absolute. The Court must proceed to balance the privacy interest against the public benefit that would result from disclosure. Here, the Court finds no public benefit to be derived from disclosure. Unlike plaintiff's Dunn request in *Ferri v. Bell*, 645 F.2d at 1217–1219, the Court finds no *Brady* material present in the documents that would further the interest of the public at large by "insuring that criminal justice is fairly administered." *Id.* at 1218. Moreover, the Court finds no other material of public interest; therefore, the Court concludes that the government acted properly in invoking the § 552(b)(7)(C) exemption.

#### 4. *Crawford and Ferri Requests*

The remainder of this Opinion addresses the plaintiff's request for information with regard to Thomas Crawford (hereinafter referred to as "Crawford") and the plaintiff, himself. With respect to Crawford, plaintiff's request stated in pertinent part as follows:

> This is a request, ... for access to all files and records within the custody of the U.S. Department of Justice pertaining to one Thomas Crawford a former Assistant United States Attorney.... It is my understanding that Mr. Crawford began as a Special Attorney working for the U.S. Dept. of Justice's Strike Force back in 1969 and was promoted later to a [sic] A.U.S. Attorney and has recently resigned from office in late 1979.
>
> This request to include [sic] all the civil and criminal prosecutions whereby Mr. Crawford aacted [sic] in [sic] behalf of

---

15. Title 5 U.S.C. § 522(b)(7)(C) provides as follows: "(b) This section does not apply to matters that are—... (7) investigatory records compiled for law enforcement purposes, but only to

the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, ...."

the U.S. of America,[16] to include [sic] any and all data with respect to Mr. Crawford's testimony or affiliation with state agencies, to include [sic] any investigations made into Mr. Crawford's activities as a federal employee and a [sic] A.U.S. Attorney.

Answer, exhibit A (docket entry No. 4). With respect to the plaintiff, himself, the request stated in pertinent part as follows:

This is a request, for access to any and all records within the custody of the U.S. Department of Justice, and its subdivisions, D.E.A., F.B.I., U.S. Marshal's Service, The Executive Offices of the U.S. Attorneys' In Washington and all others named or un-named, that pertain to myself in any manner.

The Court discusses these two requests together because, in response to these requests, the government has claimed exemption for a number of documents, and the government's *Vaughn* indices and in-camera submissions generally discuss this material simultaneously due to the nature of the request. Therefore, this Court deems it appropriate to discuss both requests in the same subsection.

█ It is first important to note that plaintiff claims that the government has not produced all documents requested.[17] The government counters plaintiff's claim by asserting that it has processed and produced as much information as reasonably possible. The Court notes that "broad, sweeping requests lacking specificity are not permissible" under the FOIA. *Marks,*

578 F.2d at 263 (plaintiff's request of the FBI for all files and documents maintained under his name was held to be too broad and sweeping); *Mason v. Callaway,* 554 F.2d 129 (4th Cir.1977), *cert. denied,* 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157, *reh. denied,* 434 U.S. 935, 98 S.Ct. 424, 54 L.Ed.2d 295 (1977) (request for all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs, including, but not limited to, the files of various government offices is not reasonably descriptive); *Irons v. Schuyler,* 465 F.2d 608 (D.C.Cir.1972), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972) (request which seeks all unpublished manuscript decisions of the Patent Office, together with such indices as are available was too broad). The Court finds plaintiff's request, with respect to Crawford and himself, to be of such a broad and sweeping nature. All that is required when the government is confronted with such a broad request is that it (the government) make a good faith effort to comply. *See Marks,* 578 F.2d at 263.

Here, pursuant to plaintiff's requests, the FBI searched its central records system with regard to Crawford[18] and plaintiff.[19] King affidavit, pp. 9–10 (docket entry No. 16). A total of 34 documents were located with regard to these two individuals, and the FBI produced some of the documents for plaintiff while claiming exemptions, either partially or entirely, on others. King affidavit, pp. 9, 12 (docket entry No. 16). Further, the Drug Enforcement Agency

---

**16.** Plaintiff later withdrew this aspect of his request in his brief in opposition to defendant's motion for summary judgment at page 17.

**17.** For example, the plaintiff's brief argues that "[e]vidence has emerged that Mr. Crawford was forced to resign, that Mr. Crawford made certain admissions to a Federal Judge with respect to the selection of juries in criminal case [sic] of which he was counsel for the government, and other evidence has emerged that Mr. Crawford while acting as an AUSA acted improperly in preparing his witnesses for testimony among other improprieties. Plaintiff seeks access to these documents." Plaintiff's brief, pp. 3–4. Plaintiff makes this conclusory statement in his

brief without submitting any affidavit or other evidentiary matter in support of the same. Such a conclusory allegation does not create a genuine issue of fact for trial. *See Marks,* 578 F.2d at 263.

**18.** Plaintiff's request with respect to Crawford was addressed to the Director of the Freedom of Information and Privacy Act Requests, United States Department of Justice. Answer, exhibit A (docket entry No. 4).

**19.** Plaintiff's request with respect to himself was addressed to the Freedom of Information Unit, United States Department of Justice. Answer, exhibit C (docket entry No. 4).

(hereinafter referred to as "DEA") searched its central files for information regarding plaintiff. The DEA located 12 documents pertaining to plaintiff's request, 10 of which were released to plaintiff with excisions while two were withheld in their entirety on the basis of claimed exemptions. Wingate affidavit, p. 3 (docket entry No. 22). Next, the Executive Office for the United States Attorneys (hereinafter referred to as "EOUSA") located records maintained, in connection with the criminal investigation and prosecution of plaintiff, by the United States Attorney's Office for the Western District of Pennsylvania and the now defunct Pittsburgh Strike Force. Of the 1805 documents located, 975 were released to plaintiff, either in full or part, while 431 were withheld and 399 were referred to other agencies. Newett affidavit, pp. 4–5 (docket entry No. 15). Finally, the Bureau of Alcohol, Tobacco and Firearms (hereinafter referred to as "ATF") processed and released certain information to the plaintiff, withholding only one page and making deletions on other pages due to claimed exemptions. Pritchett affidavit (docket entry No. 24). The Court finds that this processing of information constitutes a good faith effort to comply with the FOIA requirements. However, it is necessary to determine whether the government properly claimed exemptions for the information that was processed. The most logical fashion in which to discuss the claimed exemptions is by the various agencies that claim the same.

A. FBI

As stated above, the FBI located a total of 34 documents with regard to plaintiff's request concerning himself and Crawford. Three of the documents were released to plaintiff in their entirety, one document was released with an excision, and the other 30 documents were withheld in their entirety. The documents that were withheld include "rap sheets" and FBI investigative documents concerning Crawford's suitability to serve in a confidential and sensitive position with the United States government. To protect these documents, the government claims exemptions under § 552(b)(2),[20] (6) [21] and (7)(C).[22]

■ *i. § 552(b)(2):* Title 5 U.S.C. § 552(b)(2) permits the government to exempt from disclosure all materials that are related solely to the internal personnel rules and practices of an agency, which are of no legitimate public interest. The government asserts this exemption to protect two documents concerning a delay in receiving reports on the background investigation of Crawford prior to his being hired as a United States Attorney. King affidavit, p. 14 (docket entry No. 16). The Court has reviewed these documents in camera and found them to contain no information of public interest. Therefore, the Court concludes that defendant properly invoked the (b)(2) exemption.

*ii. § 552(b)(6):* Title 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Through § 552(b)(6), "Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" *Department of Air Force,* 425 U.S. at 372, 96 S.Ct. at 1604. Thus, the Court must perform a de novo balancing test similar to that discussed in connection with § 552(b)(7)(C) above; [23] that is, the Court must balance the individual's right to

---

**20.** Title 5 U.S.C. § 552(b)(2) provides as follows: "(b) This section does not apply to matters that are—... (2) related solely to the internal personnel rules and practices of an agency;...."

**21.** Title 5 U.S.C. § 552(b)(6) provides as follows: "(b) This section does not apply to matters that are—... (6) personnel and medical files and similar files the disclosure of which would con-

stitute a clearly unwarranted invasion of personal privacy;...."

**22.** *See* footnote 15 *supra* for text of 5 U.S.C. § 552(b)(7)(C).

**23.** *See* Section 3 (Dunn request), *supra.*

privacy with respect to personnel and medical and similar files against the public's right to information in connection with the same. The government invokes this exemption with regard to the "rap sheets" and the Crawford suitability for employment materials.[24] King affidavit, pp. 14–15 (docket entry No. 16).

▆ The Court finds, after review of the documents in camera, that disclosure of the material would constitute a definite invasion of personal privacy. Moreover, the Court finds no basis for holding that the public's interest in this material outweighs the personal privacy invasion. Plaintiff does not allege that the "rap sheets" may contain any *Brady* material that would assist him in overturning his conviction, thereby furthering the public's interest in just prosecution of criminal cases. Also, the Court sees no conceivable basis for finding great public interest in the credit, employment, and prior residence checks in the Crawford file.

▆ *iii. § 552(b)(7)(C):* As discussed above,[25] § 552(b)(7)(C) protects investigative records, the disclosure of which constitute an unwarranted invasion of personal privacy. Also as discussed above, when confronted by a § 552(b)(7)(C) privacy claim, the Court must perform a de novo balancing test. *See Ferri,* 645 F.2d at 1217. Here, the government seeks § 552(b)(7)(C) protection for the name of the FBI agents responsible for the conduct and/or supervision of investigative activities contained in the documents and for information concerning third parties not part of plaintiff's requests contained in the documents. After reviewing the documents and conducting a balancing test, the Court finds that the privacy interests out-

weigh any public interest in these materials and, therefore, further finds that the government properly invoked the § 552(b)(7)(C) exemption.

### B. DEA

After conducting a search of its central files, the DEA located 12 pages of materials in connection with plaintiff's request. Ten of the pages were released to plaintiff with excisions and two of the pages were withheld in their entirety. Wingate affidavit, ¶ 12 (docket entry No. 22). As a basis for the excisions and withholding, the government claims exemptions pursuant to 5 U.S.C. § 552(b)(2),[26] (7)(C),[27] (7)(F).[28] Specifically, the government claims exemptions for the entire investigative file jacket, an entire serialization sheet, and third-party information and the identity of law enforcement personnel contained in investigative reports. Wingate affidavit, exhibit J (docket entry No. 22).

▆ *i. § 552(b)(2):* The government claims an exemption for an investigative file jacket pursuant to 5 U.S.C. § 552(b)(2), which protects from disclosure all materials that are related solely to the internal personnel rules and practices of an agency and that are of no legitimate public interest. The file jacket in which an agency maintains its files is clearly an internal practice, and the Court finds no overriding public interest in this particular file jacket. Therefore, the § 552(b)(2) exemption was properly invoked.

▆ *ii. § 552(b)(7)(C):* The government invoked the § 552(b)(7)(C) exemption to protect third-party information contained in a serialization sheet and certain investigative reports. As noted several times above,

---

**24.** It should be noted that the Crawford materials contain such things as credit checks, arrest records, etc.

**25.** *See* Section 3 (Dunn request), *supra.*

**26.** *See* footnote 20 *supra* for text of 5 U.S.C. § 552(b)(2).

**27.** *See* footnote 15 *supra* for text of 5 U.S.C. § 552(b)(7)(C).

**28.** Title 5 U.S.C. § 552(b)(7)(F) provides as follows: "(b) This section does not apply to matters that are—... (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (F) endanger the life or physical safety of law enforcement personnel."

when confronted by a § 552(b)(7)(C) exemption claim, the Court must weigh the personal privacy interest of the third party against the public's right to information. Performing said test here, the Court finds that the scales tip in favor of the privacy interest and that the government properly invoked the exemption.

■ *iii.* *§ 552(b)(7)(F):* Title 5 U.S.C. § 552(b)(7)(F) exempts from disclosure investigatory records to the extent that the information contained therein would endanger the life or physical safety of law enforcement personnel. Pursuant to this exemption, the government excised the names of the government agents contained in the DEA investigative reports before turning the documents over to plaintiff. The Court finds this to be a proper application of the § 552(b)(7)(F) exemption.

## C. EOUSA

The EOUSA located and reviewed its files which pertain to plaintiff's request. These files relate to criminal investigation and prosecution of the plaintiff by the United States Attorney's Office and the Pittsburgh Strike Force. There were a total of 1805 pages of documents that complied with plaintiff's request. Of the 1805 pages, the EOUSA released 744 pages in full, released 231 pages with deletions, withheld 431 pages, and referred 399 pages to other agencies.[29] To protect the material withheld either in whole or in part, the government claims exemptions under 5 U.S.C. § 552(b)(5),[30] (7)(C),[31] and (7)(D).[32]

*i.* *§ 552(b)(5):* Title 5 U.S.C. § 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The government claims protection under this section for six documents—documents 2, 13, 25, 27, 28, and 58. Newett affidavit, pp. 8, 11, 15, 16, and 24 (docket entry No. 15).

In all instances in which the government asserts this exemption here, the government claims that the withheld information is exempt as the thought process of an attorney or an approach to a prosecution. In other words, the government is asserting the attorney work product privilege in connection with the six documents.[33]

---

**29.** The Newett affidavit explains that referral to other agencies means that documents were referred to other agencies, such as DEA and ATF, for direct response to plaintiff. *See* Newett affidavit, pp. 3, 4, 6, and 7 (docket entry No. 15). This explains why the DEA and ATF filed affidavits concerning release of material to plaintiff.

**30.** Title 5 U.S.C. § 552(b)(5) provides as follows: "(b) This section does not apply to matters that are—... (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;...."

**31.** *See* footnote 15 *supra* for text of 5 U.S.C. § 552(b)(7)(C).

**32.** Title 5 U.S.C. § 552(b)(7)(D) provides as follows: "(b) This section does not apply to matters that are—... (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source,...."

**33.** At first, the Court was troubled by the fact that the government was claiming the work product privilege in this action for material prepared for a criminal case, because the work product privilege generally applies to civil litigation. Apparently, the United States Supreme Court has also been troubled by this type of question because in *Environmental Protection Agency v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973), the Supreme Court stated that "under Exemption 5 ... we do not know whether the government is to be treated as though it were a prosecutor, a civil plaintiff, or a defendant." However, the Third Circuit had no problem applying the work product privilege in an FOIA action involving a previous criminal investigation in *Conoco, Inc. v. United States Department of Justice,* 687 F.2d 724, 727–728 (3d Cir.1982). The Third Circuit justified its application of the work product privilege by stating that "[e]xemption 5 has been interpreted to shield from disclosure documents 'which a private party could not discover in litigation with the agency.'" *Id.* at 727 (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975)). Therefore,

The Third Circuit has held that the § 552(b)(5) exemption includes the attorney work product privilege. *Conoco, Inc. v. United States Department of Justice*, 687 F.2d 724, 727 (1982). The attorney work product privilege "protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation." *Hickman v. Taylor*, 329 U.S. 495, 505, 67 S.Ct. 385, 390, 91 L.Ed. 451 (1947). The party asserting the privilege has the burden of proving that the document in question is protected by said privilege. *Conoco*, 687 F.2d at 730.

 The Court has carefully reviewed the Newett affidavit that discusses the documents and the documents themselves and finds that the government has fulfilled its burden of proving that the documents in question were prepared by an attorney in anticipation of litigation and that the litigation was viable at the time that the document was prepared.[34] *Id.* Moreover, the documents in question contain much more than mere factual material, and their disclosure would be "injurious to the consultative function of government." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973). Therefore, the Court finds that the government properly invoked the exemption.

 *ii.* *§ 552(b)(7)(C):* Once again the government asserts the § 552(b)(7)(C) exemption to protect certain information concerning third parties in numerous documents in the EOUSA file and once again the Court finds that the exemption was properly invoked after performing the applicable balancing test.

 *iii.* *§ 552(b)(7)(D):* The government claims § 552(b)(7)(D) exemptions for 16 documents.[35] Section 552(b)(7)(D) protects from disclosure "the identity of a confidential source" or "confidential information furnished only by the confidential source." When a § 552(b)(7)(D) exemption is claimed, "there is no requirement that the agency make a showing that there is a promise or an agreement on the agency's part to hold in confidence the information provided by the confidential source. All the agency is required to do is identify the document and state that the information was furnished by a confidential source." *Conoco*, 687 F.2d at 730. Here, the government has identified the document in its affidavit and produced the documents for Court review in camera. In addition, the government has stated in its affidavit that nondisclosure protects either the identity of a confidential source or confidential information obtained in the course of a criminal investigation. Thus, the exemption is proper.

### D. ATF

 Pursuant to plaintiff's request, ATF searched its files and located 198 documents pertaining to plaintiff. The materials include investigative reports and statements in connection with the investigation leading to plaintiff's conviction. The

---

the Court, relying on *Conoco*, finds that the government may attempt to invoke the work product privilege in this case, but the government must still establish that the exemption was properly invoked, which, as discussed *infra*, it has done. It should be further noted that in criminal cases, the government's thought process and approach to the case are not discoverable. See *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

**34.** The Court notes that a very recent United States Supreme Court case, *Federal Trade Commission v. Grolier, Inc.*, — U.S. —, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), held that an attor-

ney's work product is exempt from mandatory disclosure under § 552(b)(5) without regard to the status of the litigation, thereby specifically overruling a Circuit Court which held that documents must be disclosed under § 552(b)(5) in the absence of the existence or potential existence of related litigation. In light of the *Grolier* decision, this Court finds that the information here is protected by the privilege despite the absence of any related litigation or potential litigation.

**35.** Those documents are numbers 2, 9, 10, 18, 26, 31, 48, 49, 50, 51, 54, 55, 58, 90, 91, and 92. *See generally* Newett affidavits (docket entries Nos. 15 and 23).

government turned over 197 pages of documents, with deletions of names, addresses, and other identifying information on 51 of those pages. One document was withheld in its entirety. Defendant's in-camera submission, exhibit C (docket entry No. 27). The government claims protection for the excised and withheld material pursuant to 5 U.S.C. § 552(b)(7)(C).[36] Once again applying the balancing test required under that section, the Court finds a definite third-party privacy interest in all withheld materials. The plaintiff does not assert, and the Court does not find, any public interest in any of the withheld materials sufficient to outweigh the privacy interest involved.

### Conclusion

In sum, the Court finds that all of the "affidavits contain information of reasonable detail, sufficient to place the documents [(which have been presented to and reviewed by the Court)] within the exemption category."[37] *Lesar*, 636 F.2d at 481. Moreover, the plaintiff has not challenged the information in the affidavits by contrary evidence on the record or by evidence of agency bad faith; accordingly, summary judgment in favor of the government is appropriate. *Id.*

An appropriate Order will be issued.

---

**36.** *See* footnote 15 *supra* for text of 5 U.S.C. § 552(b)(7)(C).

**37.** In other words, the government has provided the Court with affidavits and indices of suffi-

---

cient detail that permit the Court to make a reasoned determination respecting the legitimacy of the exemptions. *See Conoco*, 687 F.2d at 728; *Coastal States Gas Corp.*, 644 F.2d at 984.