**CONOCO INC., a Delaware corporation, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE.**

**CONOCO INC., Appellant,**

v.

**UNITED STATES DEPARTMENT OF ENERGY.**

**Nos. 81–2897, 81–2963.**

United States Court of Appeals, Third Circuit.

Argued June 16, 1982.

Decided Aug. 25, 1982.

Donald B. Craven, Mark L. Evans, Robert K. Huffman (argued), Miller & Chevalier, Chartered, Washington, D. C., Charles S. Crompton, Jr., Potter, Anderson & Corroon, Wilmington, Del., for appellant; David M. Francis, Marjorie Wilhelm, Houston, Tex., of counsel.

D. Lowell Jensen, Asst. Atty. Gen., Lawrence Lippe, Atty., Dept. of Justice, Daniel S. Friedman (argued), Atty., Dept. of Justice, Washington, D. C., for appellee Dept. of Justice.

Joseph J. Farnan, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., Janice Alperin (argued), Larry P. Ellsworth, Gary A. Gegenheimer, U. S. Dept. of Energy, Washington, D. C., for appellee Dept. of Energy.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this case, Conoco Inc. appeals from the granting of summary judgment in favor of the Department of Energy (DOE) and the Department of Justice shielding certain documents from disclosure under two exemptions to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976). Conoco sought access to, and copies of twenty-seven documents possessed by DOE and seven documents from the Department of Justice.[1] The district court held that all twenty-seven documents possessed by DOE were exempt from disclosure under the FOIA and six of the seven documents held by the Department of Justice were exempt. We will affirm the grant of summary judgment

1. Conoco's original FOIA requests filed with DOE and the Department of Justice sought disclosure of every record, tape, transcript, memorandum and letter concerning the agencies' investigation of Conoco. DOE alone released in excess of 16,000 pages before narrowing the number of documents which it was unwilling to disclose to twenty-seven.

insofar as it pertains to the twenty-seven DOE documents and to five of the six documents held by the Department of Justice. We will reverse and remand the question whether the Department of Justice's Document No. 1, Schedule II, a 19-page handwritten collection of notes which was undated, unaddressed, and contained no indication of its author's identity is entitled to exemption as attorney work-product.

## I.

During an internal investigation conducted by Conoco, information was uncovered which indicated that in 1973 and 1974 certain of its employees had been involved in a scheme to circumvent petroleum price controls established by the Cost of Living Council. Conoco reported this information to the Federal Energy Administration, the predecessor agency to DOE. An investigation was undertaken by DOE and in July 1977, DOE referred the case to the Department of Justice for criminal prosecution.

On August 11, 1978, a federal grand jury returned indictments against Conoco and two of its corporate customers for making false record entries under 18 U.S.C. § 1001 (1976) and for intentionally selling and buying oil at prices in excess of those promulgated by the Cost of Living Council. Conoco entered pleas of *nolo contendere* to one felony and one misdemeanor count. The company was fined $15,000 and agreed in a consent order to repay two million dollars in overcharges and to pay $985,000 in civil penalties.

On March 23, 1979, Conoco filed a written request under the FOIA seeking access to, and copies of, all documents in DOE's possession that related to the investigation by DOE and the Department of Justice of Conoco's sales of refined petroleum products to two resellers. Conoco filed a similar request with the Department of Justice on July 31, 1980.

Conoco filed suit against DOE on October 22, 1980, seeking the documents which DOE classified as exempt in their revised index of documents of August 15, 1980. DOE further revised its index on January 15, 1981, but continued to claim an exemption for the twenty-seven documents which formed the basis of Conoco's cause of action in the court below.

Having received no response from the Department of Justice to its FOIA request, Conoco instituted suit against the Department of Justice on August 25, 1980. The Department of Justice identified thirteen documents as responsive to Conoco's FOIA request and released six of those documents. The district court, 521 F.Supp. 1301, consolidated Conoco's suits against the two governmental agencies and undertook a *de novo* review of DOE's and the Department of Justice's decisions to withhold the requested documents.

## II.

The FOIA enumerates nine categories of documents which are exempt from the general requirement of full disclosure. The Act and its exemptions represent an effort by Congress to effect a compromise between the important principle calling for the opening of government operations to public scrutiny and the pragmatic realization that some measure of secrecy is necessary to promote government efficiency and initiative. The exemptions are intended to be exclusive and narrowly construed to insure that government agencies do not develop a rubber stamp "top secret" mentality behind which legitimately disclosable documents can be shielded.

In this case, DOE and the Department of Justice rely on Exemptions 5 and 7 of the FOIA, which provide as follows:

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

. . . .

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record com-

piled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source....

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

5 U.S.C. § 552(b)(5) and (7).

DOE asserts Exemption 5 as the basis for withholding all twenty-seven of its documents. The Department of Justice claims Exemption 5 for Schedule II, Document Nos. 1, 2, 3, 4 and 6; Exemption 7(C) for Document Nos. 4, 5 and 7; and Exemption 7(D) for Document Nos. 5 and 7.[2]

## A. *Exemption 5*

As can be seen from the language of § 552(b)(5), a document is not disclosable if it is an "inter-agency or intra-agency memorandum or letter" and "would not be available by law to a party other than an agency in litigation with the agency." Exemption 5 has been interpreted to shield from disclosure documents "which a private party could not discover in litigation with the agency." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975), *citing EPA v. Mink*, 410 U.S. 73, 85–86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). In *Sears*, the Supreme Court construed Exemption 5 to protect any document which would be "normally privileged in the civil discovery context." 421 U.S. at 149, 95 S.Ct. at 1515 (footnote omitted).

■ The Supreme Court recognized that Congress intended Exemption 5 to embody an executive privilege with contours broad enough to protect the deliberative and decision-making processes of government.

*Sears*, 421 U.S. at 150, 95 S.Ct. at 1516. "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made." *Id.* at 151, 95 S.Ct. at 1516.

■ In this case, DOE claims the executive privilege and the attorney work-product privilege for all twenty-seven documents it withheld.[3] Justice asserts the attorney work-product privilege for Document Nos. 2, 4 and 6. Conoco's first argument goes to all of the documents withheld by both agencies under Exemption 5. Conoco asserts that, since the documents were located in the agencies' files and for the most part were unaddressed, they cannot constitute an "intra-agency" memorandum or letter. In Conoco's view, a document must circulate within the agency to qualify under Exemption 5.

The district court addressed this argument squarely and, we think, properly rejected it. The court reasoned as follows:

Conoco would construe the term "intra-agency" to require that memoranda be *"circulated within the agency."* The Court finds no support for this definition. Instead, this Court believes that "intra-agency" should be given its commonplace, everyday meaning. It holds that the term "intra-agency memorandums" includes handwritten notes written by agency employees which *remain within the files or confines of the agency.* This definition is consistent with the common-sense approach suggested by *Ryan v. Department of Justice*, 617 F.2d 781, 790 (C.A.D.C.1980):

**2.** The district court ordered the Department of Justice to release Document No. 3 finding that it did not qualify for exemption under § 552(b)(5). The Justice Department filed a Notice of Appeal which was docketed at 81–2818. Prior to briefing and argument in this case, however, the Justice Department withdrew its appeal.

**3.** The *Sears* opinion makes clear that the attorney work-product privilege, like the executive privilege, is available to government agencies under Exemption 5.

We start from the proposition that FOIA exemptions are to be interpreted narrowly. The Senate Committee attempted to keep Exemption 5 as narrow as was "consistent with efficient Government operation." S.Rep.No.813, 89th Congs., 1st Sess. 9 (1965). Unquestionably, efficient government operation requires open discussions among all government policy-makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advise only for specific projects. Congress apparently did not intend "inter-agency" and "intra-agency" to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process.... This common sense interpretation of "intra-agency" to accommodate the realities of the typical agency deliberative process has been consistently followed by the courts.

Applying a commonsense approach, courts have found agency employee's handwritten notes directed "to file" to be privileged under Exemption Five. *See e.g., Associated Dry Goods Corp: v. NLRB*, 455 F.Supp. 802, 810–11 (S.D.N.Y. 1978); *Joseph Horne Co. v. NLRB*, 455 F.Supp. 1383, 1387–88 (W.D.Pa.1978); *Marathon LeTourneau Co. v. NLRB*, 414 F.Supp. 1074, 1080 (S.D.Miss.1976). It would be an anomalous result to exempt memoranda that have circulated within the agency and yet force disclosure of the handwritten notes used to prepare those same memoranda. Nor does the Court believe that the handwritten notes in *Joseph Horne, supra* at 1387–88, directed "to file" are distinguishable from the handwritten notes in this case. To exempt handwritten notes merely because the notes state "to file" while requiring disclosure of handwritten notes because they lack the words "to file" seems to rely more on form rather than substance.

Consequently, this Court holds that the handwritten notes are "intra-agency memorandums" and are exempt if they satisfy the second prong of Exemption Five.

App. at 152–53 (emphasis in original).

■ Conoco's next argument addresses the second prong of Exemption 5 and is made with respect to all of the withheld documents. It is argued by Conoco that DOE and the Department of Justice have failed to meet their burden of establishing for each document the applicability of the attorney work-product privilege or the executive privilege. It is the duty of the agency seeking to withhold documents to provide an affidavit and index of sufficient detail in order to allow courts to make a reasoned determination respecting the legitimacy of exemptions. *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 984 (3d Cir. 1981). Basically, "[s]elf-serving conclusory statements in an affidavit do not satisfy the government's statutory burden." *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981).

On behalf of DOE, Jeffrey S. Whieldon, Deputy Solicitor, Office of Special Counsel for Compliance, filed a 32-page affidavit setting forth in substantial detail the nature of the documents withheld. In the accompanying index, each document is described, its author, when known, is identified, and the justification for not releasing it is set forth.[4] Twenty-one of the documents are identified as being authored by a specific lawyer or investigator at DOE and six [5] were believed to have been written by either an attorney or an investigator in anticipation of the Conoco litigation. We have read the affidavit and index and are satisfied that DOE has provided sufficient detail from which the district court could make an informed decision. Thus, it was not error for the district court to conclude

---

**4.** An example of an index entry is attached as Appendix A.

**5.** Two of the six are attributed to a named attorney at DOE but the affiant could not be certain as the documents were not signed.

Notwithstanding DOE's inability to produce the author's name for these six documents, we are satisfied that they qualify for the executive privilege as they constituted part of DOE's deliberate process.

that all twenty-seven of the documents were exempt from disclosure under either the executive privilege or the attorney work-product privilege.

The Department of Justice filed a combined 12-page affidavit and index completed by E. Ross Buckley, Chief, Freedom of Information/Privacy Act Unit. After reviewing the affidavit and index, we are satisfied that Document Nos. 2, 4 and 6 qualify under Exemption 5 as either attorney work-product or executive privilege.

It is a closer question whether the Department of Justice has met its burden of establishing the attorney work-product for Document No. 1, Schedule II.[6] Part of the problem was undoubtedly caused by Conoco's blitzkreig of the court and the government by taking positions which did not have a scintilla of legal authority and by making many requests which were overbroad, totally unwarranted and clearly unjustified. Thus within such a litigation milieu, which generates more paper and ever increasing legal fees than it offers insights for the court, a district judge may not fully grasp the one claim that may have colorable merit. While district court judges are obliged to sort the "wheat from the chaff" the task becomes extremely difficult when the chaff exists in such abundance that the single grain of wheat is hardly visible. After reviewing Conoco's multi-faceted claim for twenty-seven documents from the Department of Energy and seven documents from the Department of Justice, Judge Latchum wrote, "Conoco does not argue that the withheld documents are not attorney work-product, but asserts that the agencies have 'long since waived any claim of attorney work-product.'" App. at 154.[7]

■ Upon sorting out the maze of arguments made, it appears that as to Document No. 1, Schedule II, Conoco may have argued that this document was not an attorney work-product. Because the trial judge erred in misconstruing Conoco's position on this document by assuming that Conoco was *not* arguing that these materials were not attorney work-products, this matter must be remanded to the district court to make specific findings on this issue. The government's affidavit relating to this document is not similar to some which have been criticized as sham documents, or affidavits which are purely conclusionary.[8] Neverthe-

---

**6.** Document No. 1 is an undated 19-page collection of handwritten notes, without an author or an addressee indicated. The Department of Justice's affidavit describes the document and its basis for exemption as follows:

The work notes are irregularly structured, but apparently contain the attorney's notes with respect to the (1) essential facts, (2) the outstanding issue, (3) meetings attended, (4) highlights of interviews, (5) running summary of facts, (6) status of proceedings, (7) analysis and evaluation, and (8) settlement offers.

The document was located in the files of the Criminal Division and was deemed to be responsive to paragraphs 1 and 2 of the request.

All parts of the work notes are deemed to be exempt under 5 U.S.C. 552(b)(5) under the attorney work product privilege because the notes contain the attorney's evaluation of the evidence, mental impressions, theory of the case, litigative strategy and related notes and observations intended for the attorney's personal use in analyzing the evidence and legal issues relative to the violations of pricing regulations.

No portion of the notes is non-exempt. The courts have clearly incorporated the at-

torney work product privilege within the ambit of Exemption 5. This privilege protects the attorney's work product in a criminal proceeding. The privilege covers an attorney's working papers. His work product is recognized to include his notes, memoranda and briefs with respect to interviews, statements, mental impressions, and the like.

**7.** Conoco concedes that "the court may have confused the attorney work-product claim with the Department of Justice with that of the Department of Energy." Conoco had argued that "the Department of Energy raised the attorney work-product claim too late and that was the only work-product argument the court addressed." Appellant's brief at 24 n.15.

**8.** This is not a case like *Ferri v. Bell* where our court, after examining an FBI affidavit, concluded that the "affidavit is palpably inadequate, given that its assertion of confidentiality is controverted by evidence submitted by plaintiff suggesting that information on the mechanics of surveillance can already be found in the public domain in various scientific, technical, and government literature." 645 F.2d at 1224. Conoco, unlike the plaintiff in *Ferri*, has not produced any evidence that would tend to con-

less, we do not believe that the government's evidence entitles it to summary judgment.

■ The Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) recognized that the work-product doctrine "protects from discovery materials prepared or collected by an attorney 'in the course of preparation for possible litigation.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1228 (3d Cir. 1979), *quoting Hickman*, 329 U.S. at 505, 67 S.Ct. at 390. The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine.

■ Our reading of the affidavit leads us to conclude that the Department of Justice has failed to establish that the document was prepared by or at the direction of an attorney, that it was prepared in anticipation of litigation, or that the litigation with Conoco was still viable at the time this document was prepared. In fact, the best the affiant could say about the undated, unsigned, handwritten notes was that they "apparently contain the attorney's notes."

Under these circumstances, summary judgment is inappropriate. The matter will therefore be remanded and the Department of Justice will have an opportunity to go forward on the merits of its requested exemption. On remand the district court will make findings of fact and conclusions of law on the work-product issue. The district court will, of course, have the option of examining the document *in camera*. *Ferri v. Bell*, 645 F.2d 1213, 1222 (3d Cir. 1981).

B. *Exemption 7(C) and (D)*

■ Exemption 7(C) provides a safeguard against "unwarranted invasion[s] of personal privacy," while 7(D) protects "the identity of a confidential source" or "confidential information furnished only by the confidential source." The Department of Justice claims Exemption 7 for Document Nos. 5 and 7. As the district court properly observed,

there is no requirement that the agency make a showing that there is a promise or an agreement on the agency's part to hold in confidence the information provided by the confidential source. All the agency is required to do is identify the document and state that the information was furnished by a confidential source. To require more detail than this would greatly increase the possibility that the source and content of the confidential correspondence be revealed.

App. at 159.

The index sufficiently details the confidential nature of both documents. Document No. 5 is an 8-page letter from a Washington law firm on behalf of its client addressed to an Assistant Attorney General. Document No. 7 is a 7-page legal memorandum written by the General Counsel of Continental Oil Company and a Houston law firm. We agree with the district court that Exemption 7 is available to shield both of these documents from disclosure.

### III.

For the foregoing reasons we will affirm the order of the district court granting summary judgment in favor of the Department of Energy. We will also affirm the order granting summary judgment in favor of the Department of Justice as to Document Nos. 2, 4, 5, 6 and 7. We will reverse the order granting summary judgment in favor of the Department of Justice as to Document No. 1, Schedule II, and remand for further proceedings consistent with this opinion.

### APPENDIX A
Sample Department of Energy
Index Entry

| Document Designation: | | 46 | [89i] |
|---|---|---|---|
| Date: | June 16, 1978 | | |
| Type: | Personal handwritten notes | | |
| Pages: | 1 | | |
| Author: | Identified as Jeffrey R. Whieldon | | |
| Addressee: | None specified | | |
| Circulation: | None indicated | | |
| Title (Subject Matter): | (subject matter) | | |
| | consultation with Assistant United States Attorney on type of consent order, nature of criminal offenses and plea bargaining | | |

tradict the assertions of the Department of Justice.

Sample Department of Energy
Index Entry—Continued

Attachment:          None
Item Responsive To:  5
Custodian:           Jeffrey R. Whieldon
                     Deputy Solicitor
                     Office of Special Counsel, DOE

Description: These handwritten notes are the first of a series in the Conoco case concerning consultations between Department of Justice attorneys and officials and the attorney-advisor who was brought into the newly created Office of Special Counsel for Compliance in DOE to head special investigations generally. The Deputy Solicitor's specific role in the Conoco case was to supervise the civil enforcement activities for the Office of Special Counsel and coordinate those matters· with the Department of Justice's criminal investigation.

These notes encompass a consultation between the Deputy Solicitor and the Assistant United States Attorney in Houston on the type of consent order which should be sought, the kinds of criminal offenses which should be sought and problems attendant therein, and plea bargaining with respect to a particular individual. The personal and preliminary nature of these notes is apparent in their wholly handwritten character; in their outline and notehand format; in the fact that no circulation is indicated; in the fact several related consultations followed (see Document Nos. 47 and 50 through 60 discussed in this Index); and in the fact that the consent order and criminal pleas which were ultimately concluded differed from the tentative opinions and theories advanced here. In short, the document reflects confidential and personal notes by a lawyer-advisor expressing preliminary views on the possible natures of the consent orders, criminal offenses and plea bargains to be sought.

Exemption: (b)(5)

Justification: This document lies at the heart of the enforcement agency's deliberative process and the working papers of the agency's attorneys. The nature of highly personal and confidential notes addressing topics of obvious sensitivity subject to further consultation clearly identifies them as a predecisional document reflecting the author's opinions and deliberations. It is predecisional by definition because at that time DOE had not made any final decisions with respect to the terms of consent orders nor had the Department of Justice made any final decisions with respect to the types of criminal pleas and penalties to be sought. In actuality, the consent orders and criminal pleas and penalties which were eventually agreed upon differed in nature and in several respects from the preliminary theories and positions ventured in these notes.

The notes are a perfect illustration of both deliberative process material and the product of attorney memorializations of opinions and views prepared in anticipation of litigation or for trial. First, they clearly consist of official or executive branch information the disclosure of which would be harmful to the deliberative functions of government. It is incontrovertible that the notes are an essential part of the overall deliberative process which led to civil enforcement action culminating in consent orders (see, *e.g.*, Exhibit 2) and criminal prosecutions culminating in several criminal pleas and fines less than two months later. Moreover, the notes undeniably contain frank expressions of deliberations and opinions and reflect the mental processes and thoughts of the attorney who wrote them.

Second, it is equally unquestionable that the notes are the product of the attorney's working papers, deliberations and positions prepared in anticipation of litigation or for trial. It is manifestly obvious that notes which reflect a give and take of agency positions as a result of the consultative process with respect to the type of consent orders and kinds of criminal offenses and plea bargains which should be sought are prepared in advance of litigation or anticipate litigation. Public Interest: The disclosure of this document would be detrimental to significant public and governmental interests. First, release would injure the deliberative process of law enforcement agencies. The fact that companies and individuals regulated by DOE may obtain access to confidential and highly personal notes will perforce change the nature of these documents. For example, it was previously not-

ed that the consent orders and criminal pleas and penalties ultimately agreed upon differed in kind and in particular aspects from the preliminary opinions and views expressed in these notes. The exposure of this kind of legal deliberation and rumination would have a chilling effect on important public interests. Some legal theories and opinions may never be articulated out of a concern of embarrassment at their later being deemed unsupportable or unacceptable. Some legal positions may be unnecessarily trammeled or qualified out of an undue concern for appearances or as a result of a surfeit of caution. Even if the notes are recorded, the nature of their disclosability could tend to promote an unhealthy environment in which agency personnel might be encouraged to dispose of such notes after their use, thereby eliminating both valuable internal documentation and the process by which opinions and language are generated.

Second, disclosure of the notes would impede the articulation of thoughts and mental processes, which here permeate the entire document. Once agency attorneys and administrators realize that their confidential and subjective deliberations will be disclosed, the quantity and quality of those mental impressions and reflections will undoubtedly be affected when they are reduced to writing. It can reasonably be maintained, in fact, that the mental processes themselves will be disturbed and distorted by virtue of the realization that their expression in writing will be disclosed.

Third, release of these notes would hamper the public interest in maintaining the integrity of attorney working papers. Further, if DOE attorneys were forced to operate under conditions of disclosability that tended to encourage them to destroy such papers after their use, the public interests in preserving useful internal documentation and the process by which language and ideas are produced would be prejudiced.

Finally, disclosure of this document would not only apprise the government's regulated entities of the litigation game plan, but of the process of its construction.

Agency attorneys and litigators cannot function in that kind of fish bowl environment and simultaneously maintain the integrity of the deliberative and decision-making processes that make up effective law enforcement. The public interest would not be served either by furnishing confidential insights to the government's adversaries in litigation or by prejudicing the deliberative and decision-making processes.

In short, the public and governmental interests in effective civil and criminal law enforcement would be seriously harmed by disclosure of the deliberative process material and attorney memorializations of opinions and positions in these highly personal and private notes.