**DELCO WIRE & CABLE, INC., and Delco Electronics Corporation,**

v.

**Caspar WEINBERGER, Secretary of Defense, the Defense Logistics Agency, and their authorized representative, Karl Kabeiseman.**

**Civ. A. No. 84–1505.**

United States District Court,
E.D. Pennsylvania.

April 10, 1986.

Barry F. Schwartz and Marc Durant, Philadelphia, Pa., for plaintiffs.

Alexander Ewing, Jr. and Michael L. Martinez, Asst. U.S. Attys., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiffs have filed motions to compel Judith P. Gever to answer questions and produce documents in relation to her deposition taken on January 23 and January 28, 1985. Defendants claim that the attorney-client privilege and/or work product protection apply to these discovery requests. A description of this litigation, and of Gever's role in the litigation and in the underlying dispute, will be helpful in assessing defendants' claims.

### I.

In their original complaint, filed on March 28, 1984, plaintiffs claimed that their proposed debarment from government contracting was unlawfully predicated upon the fact that they were subjects of a grand jury investigation. Plaintiffs also claimed that they had been subjected to a *de facto* debarment without adequate notice or hearing, and that the notice of their proposed official debarment was constitutionally inadequate.

Shortly after filing their complaint, plaintiffs moved for a preliminary injunction to prevent defendants from continuing to deny them contracting rights and to stop the then ongoing debarment proceedings. After a hearing on plaintiffs' motion, I found that defendants' actions constituted an illegal *de facto* debarment of plaintiff Delco Wire & Cable, Inc. ("Delco Wire")

from December 15, 1983 until January 23, 1984, the date on which defendants instituted official debarment proceedings. On April 24, 1984, I entered judgment in favor of plaintiffs on this claim, ruling that Delco Wire was entitled to receive any and all contracts it would have been awarded during this period as the most qualified bidder under the applicable government procurement regulations. In all other respects, I denied plaintiffs' motion for preliminary injunctive relief.

Proceedings on plaintiffs' proposed debarment ended on September 20, 1984, when plaintiffs received an official notice informing them that they would be debarred from contracting with federal executive agencies until January 23, 1987. Plaintiffs then filed an amended complaint, claiming that their final debarment was unlawful because, *inter alia*, it was based on information obtained in violation of Federal Rule of Criminal Procedure 6(e), which governs grand jury secrecy. In addition, plaintiffs alleged that defendants had violated this court's order of April 24, 1984, by failing to award Delco Wire contracts to which it was entitled under the order.

Throughout this case, the discovery process has been fraught with conflict, and the parties have requested court intervention on a number of occasions. Plaintiffs' position in these disputes can be summarized as follows: in order to support their claim that information leading to their debarment was obtained by debarring officials in violation of the obligation of grand jury secrecy, plaintiffs need, through discovery, to obtain information from various government employees, including government officials, investigators and attorneys, who concededly or allegedly were involved in or had knowledge of the criminal investigation of plaintiffs and the proceedings on plaintiffs' debarment. In response, defendants have argued that the debarment decision was based solely upon factors in the administrative record, that this record is fully available to plaintiffs, and that plaintiffs' discovery requests are in large part an improper attempt to use civil discovery to obtain information about an ongoing criminal investigation. Defendants have also argued that discovery of information from the government officials, investigators and attorneys whom plaintiffs have sought to depose is precluded or restricted by various statutory, regulatory and common law privileges and protections.

II.

The present dispute involves discovery that plaintiffs seek to compel from Judith P. Gever, a staff attorney for the Defense Industrial Supply Center ("DISC"). DISC is a Department of Defense procurement office, located in Philadelphia, with which plaintiffs contracted for government sales before their debarment. Although it is difficult to ascertain from the pleadings precisely what role DISC played in the events underlying this lawsuit, it appears that DISC's involvement included providing information about plaintiffs to the Defense Logistics Agency ("DLA"), whose general counsel was the authorized debarring official for the Department of Defense, and participating in the determination of which contracts, if any, Delco Wire would be awarded based on this court's order of April 24, 1984.

Gever's role in these events, and in the resulting litigation, is likewise difficult to ascertain. The most that can be said with certainty is that Gever had at least some involvement in the events at DISC which are at issue in this litigation and that, as a result of this involvement and as part of her job at DISC, she obtained information and documents that relate to the underlying dispute. It is clear, in addition, that Gever has provided some assistance to the Department of Justice in defending this lawsuit. However, the parties vehemently disagree about the extent of this assistance and about whether Gever may be deemed an attorney for any of the named defendants in this action. Moreover, defendants make the novel argument, which I fail to understand, that plaintiffs' deposition of Gever makes her a client as to certain transactions presently at issue. The par-

ties' disparate characterizations of Gever's role in this case are at the core of their dispute over the applicability of the attorney-client privilege and work product protection to the discovery that plaintiffs seek to compel.

### III.

Plaintiffs' motions to compel were initially referred to a United States magistrate for a report and recommendation. The magistrate recommended that Gever be compelled to answer all of the disputed deposition questions and to produce eleven of the twenty-five disputed documents.[1] Defendants filed objections to the magistrate's report and recommendation and requested the court to review the matter *de novo*. Plaintiffs urged the court to approve the magistrate's report and recommendation and to order the relief recommended by the magistrate.

As a threshold issue, I will address plaintiffs' argument that under the Federal Magistrates Act, 28 U.S.C. § 636, this court may grant defendants' request for a *de novo* determination only if defendants show that the magistrate's report is clearly erroneous or contrary to law. Under the Act, there are two procedures, each with a different standard of review, for the referral of matters by judges to magistrates. Section 636(b)(1)(A) provides that, with the exception of certain enumerated dispositive motions, pretrial matters may be referred to a magistrate for determination. 28 U.S.C. § 636(b)(1)(A). A judge may reconsider these matters upon a showing that the magistrate's order is clearly erroneous or contrary to law. *Id.* The motions excepted from section 636(b)(1)(A) are governed by section 636(b)(1)(B), which allows a judge to refer these dispositive motions to a magistrate for hearing and for the submission to the court of proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). Parties may file objections to the magistrate's proposed findings and recommendations, and a judge must make a *de novo* determination of those portions of the magistrate's report to which objections are made. 28 U.S.C. § 636(b)(1)(C). In essence, plaintiffs argue that these provisions preclude a judge from referring a nondispositive pretrial matter to a magistrate for a report and recommendation rather than for determination by the magistrate subject only to review under the clearly erroneous standard.

 I disagree. That certain case dispositive matters must always be referred for recommendations rather than determination does not mandate the converse, *i.e.,* that nondispositive matters must always be referred for determination rather than recommendations. It is evident from the Act's legislative history that the purpose of the Act's referral and review provisions is to define the limits of the powers which a court may allow a magistrate to exercise, not to restrict the ultimate authority of an Article III court over a case pending before it. *See* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 9–11, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6169–71; *see also Thomas v. Arn,* —— U.S. ——, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985) (discussing the scope of the authority retained by a district judge under the Act); *Siers v. Morrash,* 700 F.2d 113, 114–16 (3d Cir.1983) (discussing the legislative history). Therefore, I conclude that a court retains the discretion to refer a nondispositive pretrial matter for a report and recommendation, and to consider objections filed thereto. *See Societa Anonima Lucchese Olii E. Vini v. Catania Spagna Corp.,* 440 F.Supp. 461, 462–63 (D.Mass.1977) (reaching the same conclusion).[2]

---

**1.** Defendants withheld twenty-nine documents called for by the deposition subpoena served on Gever. Four of these documents were never in dispute, as plaintiffs at no time sought to compel their production.

**2.** The Third Circuit's recent opinion in *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113, 1120

(3d Cir.1986), might be construed to suggest an opposite result. In *Cipollone,* the court held that under section 636(b)(1)(A) of the Magistrates Act, 28 U.S.C. § 636(b)(1)(A), a district court is precluded from reviewing a magistrate's order under a standard less deferential than the clearly erroneous standard specified by that sec-

In this case, the parties have agreed that the resolution of the instant discovery motions will provide the framework for the conduct of other witnesses' depositions, and this agreement was made part of my order of February 1, 1985. As a result, the resolution of these motions is likely to have a·significant effect on the entire course of discovery in this case. It was for this reason that I referred these motions to the magistrate for a report and recommendation rather than for disposition.

In accordance with this decision, I have considered defendants' objections to the magistrate's report and recommendation and plaintiffs' response to these objections. I agree with defendants that the magistrate's report should not be adopted as the opinion of the court. Specifically, I agree with two of defendants' objections: (i) that the magistrate incorrectly concluded that the attorney-client privilege had been waived by defendants' assertion of affirmative defenses,[3] and (ii) that the magistrate's report did not sufficiently analyze why some documents would be protected from discovery while others would not. Because these two objections convince me that I should determine *de novo* the discovery requests still in dispute, I reach no conclusions on the other seven objections raised by defendants, except insofar as my opinion constitutes an acceptance or a rejection of defendants' assertions.

■ The magistrate decided plaintiffs' motions solely on the legal memoranda and accompanying exhibits submitted by the parties; he did not hold a hearing, nor did he conduct an *in camera* inspection of the documents in dispute. Therefore, I conclude that my review of the matters still in dispute should be plenary. I also conclude that I need not reconsider the magistrate's recommendation insofar as it allows defendants to withhold fourteen of the twenty-five documents originally in dispute, as plaintiffs did not file objections to the magistrate's recommendation for disposition. *See* Fed.R.Civ.P. 72; *cf. Siers,* 700 F.2d at 116 (a party wishing to preserve the right to appeal a magistrate's decision should request reconsideration by the district court in a timely manner). Accordingly, I have independently considered the parties' memoranda of law and the accompanying exhibits, and have conducted an *in camera* inspection of the documents submitted by defendants which are still in dispute.[4] My conclusions follow.

## IV.

The elements necessary to establish the attorney-client privilege are well-known. *See, e.g., In re Grand Jury Investigation,*

---

tion of the Act. *Id.* Although I believe that *Cipollone* is at odds with the Supreme Court's recent opinion in *Thomas,* 106 S.Ct. at 474, and with the legislative history of the Magistrates Act, *see* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 9–10, I would be bound by its holding had I referred the instant motions to the magistrate for determination under section 636(b)(1)(A). However, this case is distinguishable from *Cipollone,* as it was undisputed in that case that the magistrate was proceeding under section 636(b)(1)(A). *See Cipollone,* 785 F.2d at 1113 n. 6. In contrast, I referred the instant motions to the magistrate not for determination under section 636(b)(1)(A), but for a report and recommendation, a decision which I believe to have been well within my discretion. In light of this decision, and in light of my agreement with certain of defendants' objections to the magistrate's report, *see infra* p. 686, I express no opinion as to whether, had the magistrate's recommended order been submitted to me under section 636(b)(1)(A), it would be subject to reconsideration under the clearly erroneous standard of that section.

**3.** On this issue, I adhere to my opinion in *Barr Marine Products Co. v. Borg-Warner Corp.,* 84 F.R.D. 631 (E.D.Pa.1979), wherein I concluded that "[w]aiver of the [attorney-client] privilege can occur ... by pleading privileged material as a defense, but ... only ... where the party resisting discovery raises as a defense that which transpired between client and counsel, or reliance on advice of counsel, or questions counsel's authority." *Id.* at 635 (citations omitted). The affirmative defenses raised by defendants are not of this type, as they do not put the substance of attorney-client communications directly in issue.

**4.** On October 15, 1985, I ordered defendants to submit for *in camera* inspection the eleven documents still in dispute. Defendants submitted only eight of these eleven documents. For further discussion of this matter, see *infra* p. 690.

599 F.2d 1224, 1233 (3d Cir.1979). However, because there have been a number of questions raised in this case as to the applicability of the privilege, the commonly cited formulation by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950), bears repeating:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

There are, of course, myriad questions that arise in applying this formulation to the instant case, *e.g.,* whether communications by DISC or DLA˙employees may be deemed communications made by their employers for the purpose of securing legal advice, and whether, as to any individual communication, Gever may be deemed to have been acting as a lawyer. These questions are best answered by looking to basic principles.

The purpose of the attorney-client privilege is to encourage frank communication and full disclosure between client and attorney. *See, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). However, "because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest pos-

sible limits consistent with the logic of its [purpose].' " *In re Grand Jury Investigation,* 599 F.2d at 1235 (citation omitted) (quoting 8 *Wigmore on Evidence* § 2291, at 545 (McNaughton rev. 1961); [5] *see also United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974) (privileges against forced disclosure, while designed to protect weighty and legitimate interests, are in derogation of the search for truth and must not be expansively construed). Nevertheless, courts must ensure that the privilege is not narrowed in a manner which frustrates its purpose. *See Upjohn,* 449 U.S. at 390–96, 101 S.Ct. at 683–86. To so ensure, courts must determine on a case-by-case basis whether protecting the communications at issue from compelled disclosure would further the policy of encouraging open communication between attorney and client. *See id.* at 396–97, 101 S.Ct. at 686. Thus, the principles by which I must be guided are countervailing: the privilege may neither be given undue breadth nor be unduly restricted.

▮ I believe that the application of these countervailing principles can best be accomplished by turning to a relatively mundane aspect of this issue: the burden of proof. When the record is ambiguous as to the elements necessary to establish a claim of attorney-client privilege, the burden is on the party asserting it. *In re Grand Jury Empanelled February 14, 1978 (Markowitz),* 603 F.2d 469, 474 (3d Cir.1979). This burden of proof forecloses undue restriction of an adversary's discovery by assertion of the privilege, for the privilege will not apply unless the party asserting it proves that the communications at issue come within its confines. *Cf. Jupiter Painting Contracting Co. v. United States,* 87 F.R.D. 593, 598 (E.D.Pa.1980) (the "pernicious potential" of the attorney-client privilege in a "government top-heavy

---

5. In *Upjohn,* the Supreme Court rejected the so-called "control group test" that the Third Circuit adopted in *In re Grand Jury Investigation. See Upjohn,* 449 U.S. at 390–97, 101 S.Ct. at 683–86; *In re Grand Jury Investigation,* 599 F.2d at 1235–37. However, neither the holding nor

the reasoning of *Upjohn* disapproves the principles articulated by the Third Circuit in *In re Grand Jury Investigation.* Therefore, I conclude that these principles, in addition to the principles set forth by the Court in *Upjohn,* govern the decision of the present case.

with lawyers" is best addressed by construing the privilege narrowly to conform to its purposes).

■ To sustain this burden of proof, the party asserting the privilege must show, by record evidence such as affidavits, " 'sufficient *facts* as to bring the [communications at issue] within the narrow confines of the privilege.' " *Barr Marine Products Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 636 (E.D.Pa.1979) (emphasis in original) (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D.Del. 1974)); *see also Coastal Corp. v. Duncan*, 86 F.R.D. 514, 520–21 (D.Del.1980) (discussing the manner in which a showing of privilege must be made). Further, a claim of privilege must be substantiated by reasons for preserving confidentiality. *Barr Marine*, 84 F.R.D. at 636. Rarely, if ever, will the submission of documents to the court for *in camera* inspection be adequate to prove the existence of the elements necessary to establish the applicability of the privilege. *See id.*

Certainly, the undisputed facts in the instant case do not unambiguously establish these elements. For example, Gever's various roles in this case preclude a presumption that as to any individual communication she was acting as a lawyer for an individual or entity on whose behalf the privilege could be asserted. Moreover, it is not manifest that communications made to Gever, or communications of which Gever has knowledge or documentation, were made in confidence for the primary purpose of securing legal advice. Nor is it significant, as defendants argue, that most of the disputed discovery requests relate to events that occurred after this litigation began. Because plaintiffs brought this action before their debarment became final, and because plaintiffs' final debarment and defendants' compliance with my order of April 24, 1984 are now in issue, this litigation and the events underlying it proceeded contemporaneously for approximately six months.

■ In spite of these ambiguities, defendants have submitted no evidence in support of their assertions of attorney-client privilege. Their submission entitled "Defendants' Assertion of Privilege as to Various Documents Withheld in Connection with Subpoena Served on Judith P. Gever" ("Defendants' Assertion of Privilege") identifies the documents withheld, but does not provide facts that would establish the applicability of the privilege. Defendants have argued vigorously in their brief that the privilege applies, and have made statements therein that, if properly submitted as evidence of record, might support their assertion as to some elements of the privilege. But statements in briefs, unless specifically admitted by the adversary side, cannot be treated as record evidence. *E.g., Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir.1973). Although defendants have submitted most of the documents in dispute for *in camera* inspection, this does not, by itself, meet defendants' burden of proof, for the documents do not, on their face, establish all the elements of the privilege. Nor are the elements of the privilege established by Gever's sworn deposition testimony, which plaintiffs submitted into evidence with the instant motion.

Because the parties have agreed that the resolution of the instant motions will guide future discovery in this case, I must add that, even in proper affidavit form, the assertions in defendants' brief would be insufficient to establish all the elements of the attorney-client privilege. For example, defendants assert that certain communications made by DISC or DLA attorneys are protected by the privilege; but the privilege does not apply if the information sought to be discovered was not conveyed to counsel by a client, *Bird v. Penn Central Co.*, 61 F.R.D. 43, 45–46 (E.D.Pa.1973), and it is not clear in these instances whom defendants are identifying as a client, or as the personification of a client, for purposes of applying the privilege. Defendants' assertions of privilege are also deficient in that they do not include facts showing that confidentiality has been properly maintained or that, if it exists, there are reasons

to preserve it. It is incumbent on defendants, if they wish to establish the privilege, to provide the court with the facts necessary to show that each of the criteria for the application of the privilege is met. *See Barr Marine,* 84 F.R.D. at 636; *Coastal Corp.,* 86 F.R.D. at 519–21; *Int'l Paper,* 63 F.R.D. at 93–94.

█ I conclude that defendants have not established that the attorney-client privilege applies to the discovery requested by plaintiffs. Defendants' objections to plaintiffs' discovery requests based on the attorney-client privilege will be overruled.

### V.

The work product doctrine was first announced by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Its purpose is to preserve the privacy of attorney preparation essential to the functioning of the adversary system. *Id.* at 510–12, 67 S.Ct. at 393–94. Accordingly, the work product doctrine protects from unnecessary intrusion by opposing parties or their counsel an attorney's work product as reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" when obtained or prepared "with an eye toward litigation." *Id.* at 511, 67 S.Ct. at 393–94.

█ The protection given attorney work product is not absolute; certain work product may be subject to compelled production upon a showing of necessity by the party seeking discovery. *Id.* at 511–12, 67 S.Ct. at 393–94; *see also Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 592–93 (3d Cir. 1984) (discussing the effect of a showing of need on the protection accorded different types of work product). This doctrine has been partially codified in Federal Rule of Civil Procedure 26(b)(3) which provides that a party may obtain discovery of "documents and tangible things" prepared for trial or in anticipation of litigation, by or for another party or that party's representative, only upon a showing of "substantial need of the materials in the preparation of

his case and [the inability] without undue hardship to obtain the substantial equivalent of the materials by other means."

█ As with the attorney-client privilege, the burden of proof is important to the resolution of this issue. A party claiming work product protection has the burden of establishing that the material sought to be protected as work product comes within the doctrine. *Conoco Inc. v. United States Dep't of Justice,* 687 F.2d 724, 730 (3d Cir.1982). To establish that the doctrine applies, the party opposing discovery must show, *inter alia,* that the work product it seeks to protect was "'prepared or obtained *because of* the prospect of litigation.'" *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 803 (3d Cir. 1979) (emphasis added) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970)). Once this is established, the party seeking discovery has the burden of showing substantial need and undue hardship. *Hickman,* 329 U.S. at 512, 67 S.Ct. at 394; Fed.R. Civ.P. 26(b)(3).

Plaintiffs in this case argue that, even if the information and documents they seek are deemed attorney work product, they have made the requisite showing of substantial need and undue hardship which would justify compelling discovery. I disagree.

█ In support of their argument, plaintiffs assert that their need is proven by the fact that they learned of a letter sent by a Department of Justice attorney to the DLA debarring official only after Gever identified this letter in answer to a question at her deposition. Further, plaintiffs argue that they can prove their case only through information in the possession of Gever and other DISC and DLA attorneys. However, these assertions do not establish substantial need. Plaintiffs have not attempted to show that they have a substantial need for any of the specific documents or information at issue. Their assertion that they need information in Gever's possession does not establish that

they need defendants' work product to prepare their case. Absent such a showing, I cannot compel discovery of work product protected under *Hickman* and/or Federal Rule of Civil Procedure 26(b)(3).

 Therefore, the only issue I must decide is whether defendants have established that the work product doctrine applies to the information and documents still in dispute. Although it would have been preferable for defendants to submit a detailed affidavit in support of their assertion that the doctrine applies, *see Conoco Inc.*, 687 F.2d at 728 (requiring the government to submit a detailed index and affidavit to support its withholding of documents requested under the Freedom of Information Act pursuant to, *inter alia*, the Act's work product exemption); *see also Bogosian*, 738 F.2d at 595–96 (recognizing the burden placed on a district court when it must conduct an *in camera* inspection of documents), defendants may meet their burden of proof if it is evident from Defendants' Assertion of Privilege, the documents submitted by defendants for *in camera* inspection and/or the transcript of Gever's deposition that the requested discovery is protected under the work product doctrine.[6] Thus, I proceed to an evaluation of the individual documents and deposition questions at issue in this discovery dispute.

## VI.

A. The following documents, numbered and described in Defendants' Assertion of Privilege, need not be produced because they never have been or are no longer in dispute, *see supra* p. 686 & note 1: documents Nos. 1A through H, O and P, 4, 6, 7, 8, 9, 11, 12 and 14.

B. In this court's order of October 15, 1985, defendants were ordered to submit to the court for *in camera* inspection the eleven documents still in dispute. Three of these documents were not submitted; without them, there is insufficient evidence to determine the validity of defendants' claims of privilege. Therefore, defendants will be compelled to produce documents Nos. 5, 10 and 13.

C. As to certain documents and deposition questions, defendants claimed only the attorney-client privilege. Because defendants' objections based on this privilege will be overruled, defendants will be compelled to produce document No. 1M and Gever will be compelled to answer the following deposition questions, numbered and set forth in Exhibit 2 attached to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motions to Compel Production of Documents and Testimony from Judith P. Gever, Esquire ("Defendants' Memorandum"): questions Nos. 1, 17 and 18.

D. Defendants have asserted that the work product doctrine applies to the following seven documents still in dispute:

 Documents Nos. 1I through L relate to Gever's determination of contracts on which plaintiff Delco Wire may have been the low bidder. Defendants submit that this determination was made "so that defendants could properly respond to the [c]ourt's April [24,] 1984 order." Defendants' Memorandum at 16. Unless defendants were contemplating disobeying that order, a motive which I do not wish to ascribe to them, I fail to see how having taken steps to comply with this court's order may be deemed to have been in anticipation of litigation. Therefore, the work product doctrine does not protect these documents, and defendants will be compelled to produce them.

*Haulmark Transport Systems*, 104 F.R.D. 442, 445–46 (E.D.Pa.1984). *See generally* 4 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 26.64[4] (2d ed. 1984). Therefore, defendants will be required to establish only the elements of the doctrine expressly set forth in *Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94, and Federal Rule of Civil Procedure 26(b)(3).

---

**6.** Plaintiffs argue that the work product doctrine has not been properly asserted because defendants have not shown that the material for which they seek protection was not disclosed to third parties. However, plaintiffs cite no cases, and this court is aware of none, holding that, as would be the case with the attorney-client privilege, disclosure to a third party automatically waives work product protection. *See Miller v.*

██ Document No. 1N is a note written by Gever which reflects a conversation with a DLA attorney regarding defendants' legal response to this court's order of April 24, 1984. The note contains defendants' strategy regarding possible litigation, and hence is protected work product. Defendants will not be compelled to produce it.

██ Document No. 2 is a legal memorandum written by Lillian S. Weiss, a DISC attorney, concerning Federal Rule of Criminal Procedure 6(e), on which plaintiffs based one of their claims in this lawsuit. The memorandum contains defendants' legal theories, and it is evident that it was written in preparation for the present litigation. Plaintiffs state no specific reasons why this document is not entitled to work product protection. Therefore, defendants will not be compelled to produce it.

██ Document No. 3 is a memorandum from Gever to a DISC official regarding DISC's response to this court's order of April 24, 1984. Paragraph 1 is descriptive, and paragraph 2 concerns compliance with my order. Paragraph 3 concerns defendants' strategy regarding possible litigation. For the reasons discussed in relation to documents Nos. 1I through L, *see supra* p. 690, and document No. 1N, *see supra* p. 691, defendants will be compelled to produce this document, but may first redact paragraph 3.

██ E. Defendants have asserted that the work product doctrine applies to a number of the questions asked at Gever's deposition. Initially, I note that although Federal Rule of Civil Procedure 26(b)(3) applies only to "documents and tangible things," the principles announced in *Hickman* protect the intangible work product which may be sought through deposition questions. *See* 329 U.S. at 511, 67 S.Ct. at 393; *see also Ford v. Philips Electronics Instruments Co.*, 82 F.R.D. 359, 360 (E.D.Pa. 1979). In addition, I note that defendants have asserted claims of work product protection in their brief as to deposition questions that, at the deposition, they objected to on nonspecific grounds of privilege or specifically on the basis of the attorney-client privilege only.

██ I find scant guidance on whether defendants are permitted to raise their work product claims in this manner. Federal Rules of Civil Procedure 30(c) and 32(d)(3)(A), which govern the making of objections at depositions, do not specifically address the issue of privilege. However, it is noteworthy that these rules treat liberally the reservation of objections not raised at a deposition; these objections are waived only if the ground of the objection is one which might have been obviated or removed if presented at the time of the deposition. Fed.R.Civ.P. 32(d)(3)(A). Plaintiffs have not argued that defendants' objections based on the work product doctrine might have been obviated had they been raised at Gever's deposition. Although a claim of privilege may be waived by failure to object if in consequence thereof the deponent answers the question and discloses the theretofore privileged information, *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D.Cal.1978), this did not occur. Because I find no rule requiring that the grounds of a claim of privilege be specifically stated at a deposition, and because plaintiffs raise no equitable reasons to impose such a rule in this case, I conclude that all of defendants' claims of work product protection are properly before this court.

Defendants have asserted that the following deposition questions ask for material protected under the work product doctrine:

██ Questions Nos. 2 through 10 and 21 relate to a discussion involving, *inter alia*, the preparation of Robert Jacobs for his deposition in this case. Gever testified at her deposition that in relation to Jacobs' deposition she was assisting Michael Martinez, defendants' counsel of record. Gever Deposition, January 23, 1985, at 68. The questions in dispute are of four types: (1) those that ask what advice Gever gave Jacobs concerning how he should testify at his upcoming deposition; (2) those that ask what Jacobs com-

**692**

municated to Gever; (3) those that ask about the role of Janet Cook, a DLA attorney, in representing Jacobs; and (4) those that ask about the nature of the discussion between Gever and Jacobs. The first type of question clearly calls for attorney work product, as it requests information that would reflect defendants' legal strategy regarding a deposition taken as part of this litigation. Neither the second nor third type of question asks for information about attorney preparation of this case; therefore the work product doctrine is not applicable to these questions. The fourth type of question may or may not call for attorney work product. It is not clear from the transcript of Gever's deposition whether matters in addition to preparation for Jacobs' deposition were discussed. *See* Gever Deposition, January 23, 1985, at 117. Because it is not evident, and defendants have submitted no evidence to establish, that the entire discussion at issue related to Jacobs' deposition and was, therefore, in anticipation of litigation, Gever will be compelled to answer these questions. However, in so answering, she need not reveal specific advice, if any, that she gave to Jacobs, but need only state that such advice was given. Accordingly, Gever will be compelled to answer questions Nos. 2, 8 and 21, subject to the foregoing qualification; she will be compelled to answer questions Nos. 3, 5, 9 and 10 without qualification; and she will not be compelled to answer questions Nos. 4, 6 and 7.

Questions Nos. 11 through 16 and 19 appear to ask for information about attorneys' work done in relation to events giving rise to this litigation, not about preparation for the litigation itself. Defendants have not shown that these questions ask for attorney work product prepared or obtained because of the prospect of litigation. Therefore, Gever will be compelled to answer these questions.

Question No. 20 asks for DISC's recommendation to DLA as to settlement with plaintiffs. This question calls for legal opinion relating to this litigation, and is therefore protected under the work product

doctrine. Gever will not be compelled to answer this question.

An appropriate order, granting in part and denying in part plaintiffs' motions to compel, will be entered.