**HYDRAMAR, INC.**

v.

**GENERAL DYNAMICS CORPORATION**

v.

**HYDRAMAR, INC. and George Andrew Hlatky.**

Civ. A. No. 85–1788.

United States District Court, E.D. Pennsylvania.

Feb. 9, 1988.

---

Peter S. Clark and Thomas P. Preston, Philadelphia, Pa., for plaintiff.

Paul D. Moore and Paul W. Gromer, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The matter presently before the Court arises out of Hydramar, Inc.'s motion to compel discovery from defendant, General Dynamics Corporation. This motion was addressed previously by this Court in a Memorandum and Order issued on September 22, 1986. *See Hydramar, Inc. v. General Dynamics Corporation,* 115 F.R.D. 147 (E.D.Pa.1986).

In its Memorandum and Order, this Court acknowledged that plaintiff sought information bearing "on how General Dynamics handled plaintiff's January 21, 1983 claim to adjust equitably the contract price." Information of this sort, plaintiff argued "[was] essential both to a determination of whether General Dynamics' conduct was tortious as [...] alleged in Counts II–VII of plaintiff's complaint and to a determination of whether General Dynamics negotiated and dealt with Hydramar with the utmost good faith and fair dealing as ... alleged in the defendant's answer to the plaintiff's complaint." *Hydramar, Inc.,* at 149 (E.D.Pa.1986) (hereinafter "Slip opinion").

The defendant in the papers it submitted to this Court objected "to the discovery of this type information on the ground that it [constituted] 'opinion' work product." *Id.*

More specifically, the defendant contended "that the requested information was prepared in anticipation of litigation and that discovery of this information [would] reveal defendant's trial strategy and thoughts with respect to the breach of contract action alleged in Count I of plaintiff's complaint." *Id.*

This Court found upon the record before it that the "defendant [had] failed to meet its burden of proving that documents generated prior to May 13, 1983 that plaintiff [sought] to discover were prepared or obtained because of the prospect of litigation." At 150.

This Court, at that time "held that all documents generated ... prior to May 13, 1983 by the defendant [were subject to discovery] ... by the plaintiff" if otherwise in satisfaction of Fed.R.Civ.P. 26. At 151.

As to documents prepared by General Dynamics on or after May 13, 1986, the Court stated that it was not in a position to say whether these documents were prepared in anticipation of litigation from the papers submitted by the parties to the Court. Equally the Court related in its Memorandum and Order that without actually viewing the documents in question it was not "in a position to pass upon defendant's claim that any such document or testimony based upon any such document contains work product or 'opinion' work product." At 151.

This Court then ordered the defendant "to submit under seal any documents or information based upon any such document generated on or subsequent to May 13, 1986, that it claims is protected from discovery by virtue of the work product doctrine for *in camera* inspection."

After this Court's Order dated September 22, 1986 was issued, the parties attempted to resolve this matter amicably. However, their efforts in this regard were unsuccessful.

The defendant has submitted on two occasions documents for *in camera* review subsequent to this Court's decision of September 22, 1986 that it claims are protected from discovery by virtue of the work product doctrine. It is to the *in camera* inspection that the Court will now turn.

## I. *Anticipation of Litigation*

■ The threshold issue presented for decision remains whether the documents prepared by the defendants on or after May 13, 1986, were prepared in anticipation of litigation. Of course, the burden of showing that these documents were in fact prepared in anticipation of litigation remains with the party asserting the work product doctrine; which in this case is the defendant, General Dynamics. *See Conoco Inc. v. United States Department of Justice*, 687 F.2d 724 (3d Cir.1982).

In passing upon the "in anticipation of litigation" issue, this Court, in its Memorandum and Order of September 22, 1986, noted that Hydramar did not threaten General Dynamics with the prospect of litigation until May 13, 1983. This Court also realized at that time that this particular threat of litigation would play an important role in the *in camera* inspection that it is now called upon to make.

This Court observed that:

As to documents prepared by General Dynamics on or after May 13, 1986, this Court will decide, upon an *in camera* inspection, with the first threat of litigation being a significant factor, whether the defendant has established that the documents were prepared in anticipation of litigation.

At 150 n. 3.

With this in mind, the Court has examined the documents submitted and finds that there is other significant evidence in the record, which, in addition to or combined with Hydramar's first threat of litigation, demonstrates that the documents submitted for *in camera* inspection were prepared in anticipation of litigation. Thus, these materials are entitled to work product protection.

### A. The Factual Backdrop

As the Court has noted above, Hydramar threatened to sue General Dynamics on May 13, 1983. Significantly, Hydramar followed this threat with a telex dated June

29, 1983, which asserted that General Dynamics had forced Hydramar into bankruptcy. *See* Memorandum of General Dynamics Corporation Regarding In Camera Review of Documents Submitted Under Seal, (hereinafter "In Camera Review Memorandum") at p. 4 and Exhibit 2.

Thereafter, Duane, Morris & Heckscher, Hydramar's counsel in this litigation, became involved in Hydramar's discourse with General Dynamics. On October 20, 1983, Duane, Morris & Heckscher sent a letter both to General Dynamics' in-house counsel and to Foley, Hoag & Eliot once again threatening to sue General Dynamics. *See* In Camera Review Memorandum at Exhibit 3. On October 28, 1983, attorneys from Duane, Morris & Heckscher and Foley, Hoag & Eliot met to discuss Hydramar's claim. On that date, the parties entered into a non-disclosure agreement in order to foster settlement negotiations. *See* In Camera Review Memorandum at Exhibit 4. On November 30, 1983, Duane, Morris & Heckscher, defendants allege, sent another letter to General Dynamics' in-house counsel and outside litigation counsel, once again mentioning the possibility of litigation. *See id.* at p. 5.

### B. Analysis

The events occurring after May 13, 1983, related above, when considered with Hydramar's first threat of litigation, make clear that the relationship between the parties was, on and after May 13, 1983, altered considerably. Hydramar's claim to adjust equitably the contract price became, in all respects, a demand on General Dynamics—a demand that one makes before actually instituting litigation. This is confirmed by a review of the documents submitted for *in camera* inspection.

These documents reveal that after May 13, 1983, General Dynamics pursued a course of conduct whereby it sought to and did in fact accumulate through its ranks, all evidence relevant to choosing a posture with respect to the litigation of this matter. The information assembled by General Dynamics' employees on the "Hydramar" matter was either prepared for review by counsel or was prepared for the benefit of high-ranking corporate officers at the Quincy Shipbuilding Division to assist them in dealing with counsel. General Dynamics, after May 13, 1983, endeavored to draw a line by which it would precisely define its obligations to Hydramar under the Purchase Order Agreement and its supplements.

### C. Conclusion

When the documents submitted for *in camera* inspection are reviewed against the factual backdrop described above, the conclusion that the defendant prepared these documents in anticipation of litigation with Hydramar is inescapable. Thus, these documents are entitled to work product protection. The only issue remaining for the Court to decide is to what extent it should protect these documents from discovery. To this issue, the Court will now turn.

### II. *Protection from Discovery*

### A. "Opinion" Work Product

■ The documents submitted for *in camera* inspection, both individually and then as a whole, reveal the defendant's analysis of the breach of contract claim that is being pursued by the plaintiff. In these documents, Hydramar's contractual claim is broken down and analyzed on an item-by-item basis by the defendant's employees. Moreover, the documents also contain expressions by the defendant's employees as to which party is responsible for each particular item of damages claimed, often with reasons for each conclusion. The content of these documents, containing the defendant's analysis of the plaintiff's contract claim, are "opinion" work product, as they represent the defendant's or his lawyer's mental impressions, conclusions, opinions and/or legal theories concerning the instant litigation. *See Sporck v. Peil,* 759 F.2d 312 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984).

If any doubt remained as to the validity of this conclusion, it is removed when one reviews these documents closely. A close

reading of these documents reveals the strategy that the defendants are likely to pursue at a trial of the breach of contract claim. This is so because the subject documents as stated before, were prepared for review by counsel or were prepared for the benefit of corporate officers at the Shipbuilding Division when later dealing with counsel.

### B. Relevancy Dilemma

Hydramar contends that information of this sort is essential both to a determination of whether General Dynamics' conduct was tortious as is alleged in Counts II–VII of plaintiff's complaint and to a determination of whether General Dynamics negotiated and dealt with Hydramar with the utmost good faith and fair dealing as is alleged in the defendant's answer to the plaintiff's complaint. The plaintiff argues that where a party's trial preparation materials are put directly at issue in a case either by a plaintiff's complaint or by a defendant's answer, they are not protected by either the work product or "opinion" work product doctrines. *See Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D.Pa.1973) (Lord, C.J.); *Shapiro v. Allstate Insurance Co.,* 44 F.R.D. 429 (E.D.Pa.1968) (Fullam, J.). *See also Central National Insurance Co. of Omaha v. Medical Protective Co.,* 107 F.R.D. 393 (E.D.Mo.1985).

The Court finds merit in the plaintiff's argument. However, the plaintiff ignores the fact that in addition to the actions sounding in tort alleged at Counts II through VII, they have also alleged at Count I an action for breach of contract.

As this Court earlier stated, the materials sought by the plaintiff:

1. Were prepared in anticipation of litigation by the defendant or the defendant's representatives; and

2. Would reveal the defendant's trial strategy and related thoughts with respect to the breach of contract alleged at Count I.

Under the present circumstances, the Court is not inclined to order the production of these materials.

### C. Bifurcation

■ This Court, however, on its own motion, will sever the breach of contract action alleged at Count I from all the other claims. See Fed.R.Civ.P. 42(b).[1] The trial of the contract action will occur first. Then the plaintiff will be permitted to proceed with the other actions alleged. However, before the trial of the actions that sound in tort, (Counts II through VII), the plaintiff will be permitted to renew its motion to compel discovery. At that time, the Court will order the production of the documents submitted by the defendant for *in camera* inspection as these documents are directly relevant to the plaintiff's allegations that the defendant breached its duty to negotiate in good faith and that the defendant destroyed its business as a going concern. Under these circumstances, whatever work product protection these documents now retain would then be overcome by the plaintiff's need for this information.

By proceeding in this fashion, a proper balance will be struck between a litigant's need for evidence to present its case and a party's work product rights.

### III. *Depositions and the Work Product Doctrine*

The plaintiff's motion to compel discovery includes a request that Paul Pelletier, Leroy Bennett and James Muir be ordered to provide full and complete answers to certain questions propounded at their depositions. Each person at his deposition

---

1. Federal Rule of Civil Procedure 42(b) reads in pertinent part as follows:

 . . . .

 (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

refused to answer certain questions propounded by the plaintiff by asserting the work product doctrine.

■ The work product doctrine does in a very limited way operate to circumscribe the scope of depositions upon oral examination. *See Ford v. Philips Electronics Co.*, 82 F.R.D. 359 (E.D.Pa.1979); *Ceco Steel Products Corp. v. H.K. Porter Co.*, 31 F.R.D. 142 (N.D.Ill.1962). *Cf. Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680 (E.D.Pa.1986). The thrust of these cases has been that a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation.

For example, in *Ceco Steel Products Corp. v. H.K. Porter Co.*, 31 F.R.D. 142, 144 (N.D.Ill.1962), the court refused to compel a vice president of the plaintiff corporation to answer questions asked at oral deposition concerning conversations he overheard between plaintiff's counsel and employees of plaintiff's insurer. In denying the motion to compel, the court relied in part on the danger that the desired discovery would "reflect what plaintiff's counsel then thought were the strong and weak points in Ceco's case." *Id.*

Similarly in *Ford v. Philips Electronics Instrument Co.*, 82 F.R.D. 359, 361 (E.D. Pa.1979), the district court, when confronted with a motion to compel a witness to answer a question at oral deposition held that "[d]efendant's counsel shall be given free reign [sic] to inquire into the substance of the witness' knowledge concerning matters relevant to the subject matter of this action.... Such inquiry may not, however, include questions that tend to elicit ... the facts to which plaintiff's counsel appeared to attach significance, or any other matter that reveals plaintiff's counsel's mental impressions concerning this case." *Id.*

Application of the work product doctrine, however, to oral deposition must necessarily be limited. Otherwise, litigants would use the work product doctrine unfairly to restrict the open discovery process envisioned by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 26. Thus:

> [c]ourts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such fact, or the existence or non-existence of documents, even though the documents themselves may not be subject to discovery.

8 Wright & Miller, Federal Practice & Procedure, § 2023, at 194 (1970).[2] With these considerations in mind and the additional considerations that were raised earlier in this opinion, this Court will request that the depositions of Paul Pelletier, Leroy Bennett and James Muir go forward to the extent possible. Of course, after the breach of contract action is tried and plaintiff renews its motion to compel discovery, Mr. Pelletier, Mr. Bennett and Mr. Muir can be deposed a second time. Of course, the plaintiff at that time will have greater latitude in deposing these men.

An appropriate Order follows.

### ORDER

AND NOW, this 9th day of February, 1988, upon consideration of plaintiff's motion to compel discovery (Docket Entry No. 19), defendant's memorandum in opposition to Hydramar, Inc.'s motion to compel discovery (Docket Entry No. 23), plaintiff's response to defendant's memorandum in opposition to plaintiff's motion to compel discovery (Docket Entry No. 35), the Memorandum and Order of September 22, 1986 (Docket Entry No. 42), the memorandum of General Dynamics Corporation regarding in camera review of documents submitted under seal (Docket Entry No. 44), memorandum of General Dynamics Corporation regarding in camera review of additional documents submitted under seal (Docket

---

**2.** Moreover, discovery of information by one party from the other is to some extent expected under the Federal Rules of Civil Procedure to reveal either circumstantially or by implication the theory that an opposing party will pursue during the trial of that matter.

Entry No. 46), and those documents under seal submitted by defendant General Dynamics Corporation for in camera review, and in accordance with the foregoing memorandum, it is hereby ORDERED that the breach of contract cause of action alleged by the plaintiff will be tried separately and before any of the other claims made by the plaintiff and in a manner consistent with the foregoing Memorandum.

It is further ORDERED that the plaintiff's motion to compel discovery is DENIED at this time. However, it is further ORDERED that the plaintiff may renew its motion to compel discovery in a manner consistent with the foregoing Memorandum.

It is further ORDERED that the depositions of Paul Pelletier, Leroy Bennett and James Muir proceed at this time in a manner consistent with the foregoing Memorandum.

It is further ORDERED that these men will be subject to redeposition if the plaintiff renews its motion to compel discovery as described above.