**BARRETT INDUSTRIAL TRUCKS, INC., Plaintiff,**

v.

**OLD REPUBLIC INSURANCE COMPANY, Baccala & Shoop Insurance Services, Inc., and Meadowbrook Inc., Defendants.**

No. 87 C 9429.

United States District Court, N.D. Illinois, E.D.

Jan. 9, 1990.

John M. Touhy, Mayer, Brown & Platt, John C. Berghoff, Jr., Robin Lee Fenton, Don W. Fowler, Lord, Bissell & Brook,

---

1. No further instruction to the capable and honorable lawyers representing the United States

should be necessary.

**516**

Kathryn G. Montgomery, Chicago, Ill., for plaintiff.

Thomas M. Crisham, Janet R. Davis, Philip R. King, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Eric Samore, Brian Clarke, James J. O'Hagan, Querrey & Harrow, Ltd., Chicago, Ill., Robert Cubbin, Southfield, Mich., pro hac vice, for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Herman Kornatz, a former employee of plaintiff Barrett Industrial Trucks, Inc. ("Barrett") is a key fact witness in this insurance dispute. After this suit was filed, however, Barrett[1] hired Mr. Kornatz as a consultant for this litigation. At issue is whether the substance of conversations between Mr. Kornatz and Barrett's attorneys are protected by the attorney-client privilege or work-product doctrine. Barrett contends that the conversations are privileged; defendant Meadowbrook, Inc. ("Meadowbrook"), which has moved to compel disclosure of these conversations, contends that they are not.

## BACKGROUND FACTS

Mr. Kornatz began as an employee for Barrett in 1966. (Kornatz Dep. at 7.) Eventually he became the corporation's vice president of finance. (*Id.*) While at Barrett one of Mr. Kornatz's responsibilities was to obtain insurance coverage for Barrett. (Plaintiff's Response Mem. at 3.) Thus, he is a key fact witness in this case, which involves a dispute over insurance coverage.

In 1984 Barrett's management consolidated some of the corporation's companies, eliminating Mr. Kornatz's position. (Kornatz Dep. at 117.) In the spring of 1988, a few months after Barrett filed this lawsuit, two of Barrett's attorneys—John Touhy of Mayer, Brown, and Platt, and Irene Mehta, corporate counsel for Mannesman Demag

---

**1.** Or rather Mannesman Demag ("Mannesman"), Barrett's corporate successor as of 1982.

(Barrett's corporate successor)—contacted Mr. Kornatz and retained him as a "consultant" for this litigation. (Kornatz Dep. at 97–98; Plaintiff's Response Mem. at 3.) Under an oral contract Mannesman was to pay Mr. Kornatz $50.00 per hour for his consulting services. (Kornatz dep. at 102–103.)

According to Barrett Mr. Kornatz's activities have included:

> ... discussing the facts of the case with Mayer, Brown attorneys, returning to Barrett pursuant to the request of the Mayer, Brown attorneys to assist in collecting all of the relevant documents, and, again pursuant to the request of the Mayer, Brown attorneys, assisting in the preparation of interrogatory responses and requests to admit propounded on Barrett. Mr. Kornatz was also one of the two people who verified Barrett's interrogatory responses.

(Plaintiff's Response Mem. at 4.) According to Mr. Kornatz he also discussed his deposition with Mr. Touhy. (Kornatz dep. at 109.)

During Mr. Kornatz's deposition one of Meadowbrook's attorneys asked Mr. Kornatz about the substance of Mr. Kornatz's conversations with counsel for Barrett. (Kornatz dep. at 99, 105–109, 112–113.) One of Barrett's attorneys, however, instructed Mr. Kornatz not to answer the questions, asserting the attorney-client privilege. Meadowbrook now moves to compel Mr. Kornatz to answer questions regarding his conversations with Barrett's attorneys.

## DISCUSSION

In its brief Barrett claims that conversations between Mr. Kornatz and Barrett's attorneys are protected from discovery by both the attorney-client privilege and the work-product doctrine.

### A. *The Attorney–Client Privilege*

■ Because this is a diversity case involving claims and defenses under Illinois

(Plaintiff's Response Mem. at 3.)

law, under the Federal Rules of Evidence Illinois law determines the applicability and scope of privileges. Fed.R.Evid. 501.

Barrett bears the burden of showing that the attorney-client privilege attaches to Mr. Kornatz's communications. *Archer Daniels Midland Co. v. Koppers Co.*, 138 Ill. App.3d 276, 93 Ill.Dec. 91, 93, 485 N.E.2d 1301, 1303 (1st Dist.1985). To do so, under Illinois law Barrett must show that Mr. Kornatz was a member of Barrett's "control group" as defined by the Illinois Supreme Court in *Consolidated Coal Co. v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 432 N.E.2d 250 (1982).

Barrett cannot meet this burden, however, because in *Consolidated Coal* the Court stated:

> [A]s a practical matter, the only communications that are ordinarily held privileged under [the control-group] test are those made by *top management* who have the ability to make a final decision [or those made by] an *employee* whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority....

*Id.*, 59 Ill.Dec. at 673, 432 N.E.2d at 257 (1982) (emphasis added). Unfortunately for Barrett, at the time he spoke with Barrett's attorneys Mr. Kornatz was no longer an "employee" of Barrett—he was a "consultant," retained to assist in this particular litigation to which he also conveniently happened to be a key witness. Thus, Mr. Kornatz was not a member of the Barrett "control group" when he spoke with Barrett's attorneys and hence the attorney-client privilege did not attach.

This ruling comports with the Illinois Supreme Court's warning in *Consolidated Coal:*

> Under some circumstances, however, the [attorney-client] privilege poses an absolute bar to the discovery of relevant and material evidentiary facts, and in the corporate context, given the large number of employees, frequent dealings with lawyers and masses of documents, the "zone of silence grows large." That result, in our judgment, is fundamentally incompatible with this State's broad discovery policies looking to the ultimate ascertainment of the truth, which we continue to find essential to the fair disposition of a lawsuit. Its potential to insulate so much material from the truth-seeking process convinces us that the privilege ought to be limited for the corporate client to the extent reasonably necessary to achieve its purpose. As Dean Wigmore admonished:

> > [T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete * * *. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.

59 Ill.Dec. at 673, 432 N.E.2d at 257 (citations omitted).

Moreover, holding that the attorney-client privilege does not protect communications with a former employee now employed as a "consultant" is consistent with this court's ruling in *Clark Equipment Company v. Lift Parts Manufacturing Co.*, No. 82 C 4585 (October 1, 1985) (1985 WESTLAW 2917):

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit.

*Id.* at 12. Mr. Kornatz's interest in the outcome of this litigation is even more difficult to assess than the interests of the parties in *Clark.* While Mr. Kornatz's $50.00 an hour consulting fee may tend to

bring Mr. Kornatz's interests more in line with Barrett's, the fact that Mr. Kornatz lost his position at Barrett indicates that his interests and those of the corporation indeed may not be sufficiently aligned to consider him the "client" for purposes of the attorney-client privilege.

In any event, the Illinois courts have made it abundantly clear that any unwarranted extensions of the attorney-client privilege under Illinois law must be resisted. *See, e.g., Consolidated Coal,* 59 Ill. Dec. at 673, 432 N.E.2d at 257 (1982) ("The control-group test appears to us to strike a reasonable balance by protecting consultations with counsel by those who are the decisionmakers or who substantially influence corporate decisions and by minimizing the amount of relevant factual material which is immune from discovery.") The Illinois courts have not extended the protection of the attorney-client privilege to former employees and this court refuses to do so here.

Thus, this court holds that the attorney-client privilege, as applied by the courts of Illinois, does not extend to communications with former employees of a client corporation now employed as "litigation consultants."[2] Hence, the attorney-client privilege does not protect conversations between Mr. Kornatz and Barrett's attorneys.

### B. *The Work Product Doctrine*

Barrett also argues that the substance of Mr. Kornatz's conversations with Barrett's attorneys are protected by the work-product doctrine. The doctrine is embodied in Federal Rule of Civil Procedure 26(b)(3), which states in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (*including the other party's attorney, consultant,* surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.Pro. 26(b)(3) (emphasis added).

Although it addresses explicitly only documents and other tangible things, in a limited way the work product doctrine also operates to circumscribe the scope of depositions upon oral examination. Specifically, "a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation." *Hydramar, Inc. v. General Dynamics Corp.,* 119 F.R.D. 367, 372 (E.D.Pa.1988).

■ However, the work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel. *See In re ContiCommodity Services, Inc., Securities Litigation,* 123 F.R.D. 574, 577 (N.D.Ill.1988). As noted in Wright and Miller:

> The courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the *facts* that the adverse party's lawyer has learned, or the *persons from whom he has learned such facts,* or the *existence or nonexistence of documents,* even though the

---

2. The cases cited by Barrett are inapposite, as they extended the attorney-client privilege to former employees in jurisdictions which did not seek to confine the privilege within the same narrow limits required by the Illinois courts. *Contrast Command Transportation, Inc. v. Y.S. Line (USA) Corp.,* 116 F.R.D. 94 (Mass.D.C.1987) *and Commonwealth v. Goldman,* 395 Mass. 495, 480 N.E.2d 1023, 1028–29 (1985) *with Consolidated Coal Co.,* 89 Ill.2d 103, 59 Ill.Dec. 666, 432 N.E.2d 250 (1982).

documents themselves may not be subject to discovery.

8 Wright & Miller, *Federal Practice & Procedure,* § 2023, at 194 (1970) (emphasis added).

■ Applying these principles, Meadowbrook's motion to compel must be granted in so far as it seeks to elicit from Mr. Kornatz facts that Barrett's attorneys may have communicated to Mr. Kornatz, the persons from whom Barrett's attorneys have learned such facts, or the existence or non-existence of documents, even though the documents themselves may not be subject to discovery. However, insofar as Meadowbrook seeks to elicit from Mr. Kornatz the specific questions that Barrett's counsel has asked him, or even the area of the case to which counsel directed the majority of the questions, the questions are improper as tending to disclose the mental impressions, conclusions, opinions, or legal theories of Barrett's attorneys. *See Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359, 360 (E.D.Pa.1979). Finally, because Mr. Kornatz is a consultant to Barrett, Meadowbrook may not, under Fed.R. Civ.Pro. 26(b)(3), subject to Fed.R.Civ.Pro. 26(b)(4), elicit answers which would disclose whatever mental impressions, conclusions, opinions, or legal theories Mr. Kornatz may have.

CONCLUSION

Defendant Meadowbrook's motion to compel Herman Kornatz to answer questions regarding his conversations with plaintiff's attorneys is GRANTED to the extent explained in this memorandum opinion.