Edward J. **RUSSELL**, Plaintiff,

v.

The **GENERAL ELECTRIC COMPANY**, Defendant.

No. 93 C 0493.

United States District Court, N.D. Illinois, E.D.

May 3, 1993.

Thomas Howard Geoghegan, Despres Schwartz & Geoghegan; Richard G. Smoley, Sachnoff & Weaver, Ltd., Chicago, IL; and Paul B. Martins, Helmer, Lugbill & Whitman Co., L.P.A., Cincinnati, OH, for plaintiff.

Dan K. Webb and Lawrence R. Desideri, Winston & Strawn, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff Edward J. Russell, a former vice-president and officer of defendant General Electric Company ("GE"), commenced this

diversity action in the United States District Court for the Southern District of Ohio, alleging that GE terminated him in violation of Ohio's whistleblower statute and Ohio common law. At the time of his termination, plaintiff was the general manager of GE's industrial diamond operation. Plaintiff alleges that GE terminated him in retaliation for his opposition to GE's alleged antitrust and securities law violations. In response to these allegations, GE contends that plaintiff was terminated for poor performance and cites to a corroborating evaluation of plaintiff performed by management consultant, Bradford D. Smart ("Smart"). This opinion concerns a discovery dispute in this district over the deposition of Smart.

Smart was hired by GE to consult with plaintiff after plaintiff's staff allegedly reported to upper management that plaintiff was performing poorly. Smart testified that his consultations with employees such as plaintiff included in-depth interviews with the individual and his co-workers, group sessions, feedback counseling and development of a plan to address the individual's deficiencies. As a result of his consultation with plaintiff, Smart concluded that plaintiff was unfit for his position and would probably be discharged for poor performance within a matter of months. Plaintiff was in fact terminated within months after Smart completed his consultation.

Plaintiff deposed Smart in this district because Smart works and lives in the Chicago vicinity. During his questioning of Smart, plaintiff's counsel sought to discover whether any other GE executives who consulted with Smart were terminated and whether Smart's services were similar to those provided to plaintiff. Plaintiff also inquired as to the identities of Smart's other corporate clients to ascertain whether Smart might be biased in GE's favor. Finally, plaintiff sought to discover what had transpired at a meeting between Smart, Smart's counsel and counsel for GE two days prior to the deposition. Both counsel for Smart and GE objected to these questions and advised Smart not to answer. Plaintiff subsequently moved to compel answers to these deposition questions pursuant to Federal Rule of Procedure 37(a)(1).

## I. Questions re: Smart's meeting with defendant's counsel

At his deposition, Smart stated that he and his counsel had met two days earlier with defendant GE's counsel, Mr. Webb. Plaintiff's counsel then asked Smart, "What was discussed at the meeting?" Later in the deposition, plaintiff's counsel asked Smart, "Were the matters that Mr. Webb covered with you this evening for the past several hours the same matters that he discussed with you on Sunday, October 11?" Defendant's counsel objected to both questions. Defendant contends that plaintiff is not entitled to this information because (1) a joint defense privilege protects the statements Smart made at the meeting to his counsel and to GE's counsel, and (2) the work product doctrine protects those statements.

The joint defense privilege is intended to facilitate communication among joint parties regarding matters that are important to protect their interests in litigation. *U.S. v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir.1979). As stated by the Seventh Circuit, the privilege "allows a defendant to assert the attorney-client privilege to protect his statements made in confidence not to his own lawyer, but to an attorney for a co-defendant for a common purpose related to the defense of both." *U.S. v. Keplinger*, 776 F.2d 678, 701 (7th Cir.1985). Although originally limited in application to co-defendants, the privilege has been extended to parties sharing a common interest in actual or potential litigation, e.g., putative members of a plaintiff class. *Schachar v. American Academy Ophthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D.Ill.1985).

However, the Seventh Circuit still restricts the joint defense privilege to parties or potential parties to an action. Smart is neither a party to this action nor to any potential or related action. He is merely a potential witness. Even were the Seventh Circuit to extend the privilege to any person sharing a common interest in actual or potential litigation, that common interest refers to an interest in the outcome of a claim. GE

argues that plaintiff is attempting to discredit Smart as a witness, and that GE and Smart share a common interest in validating Smart's work and credibility. GE and Smart do indeed share this interest, but every party has an interest in validating its witness' work and credibility. Smart's interest in his own credibility is a personal one which is not specific to the claim. As a witness, Smart has little stake in the outcome of the claim.

■ Defendant also claims that this information is protected under the work product doctrine because the questions are calculated to elicit the mental impressions of GE's counsel. The work product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3) which provides:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party ... (*including the other party's attorney, ...*) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials ..., *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney ....*

FRCP 26(b)(3) (emphasis added). Although the language of Rule 26(b)(3) refers only to documents and other tangible things, courts have held that " 'a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation.' " *Barrett Industrial Trucks, Inc. v. Old Republic Ins. Co.,* 129 F.R.D. 515, 518 (N.D.Ill.1990), quoting *Hydramar, Inc. v. General Dynamics Corp.,* 119 F.R.D. 367, 372 (E.D.Pa.1988); see *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* No. 84 C 6746, 1991 WL 214062, at *2, 1991 U.S.Dist. LEXIS 14751, at *6 (N.D.Ill. October 15, 1991).

In *Barrett,* defendants sought to compel plaintiff's witness to answer questions regarding conversations the witness had with plaintiff's attorneys. The court determined: "insofar as [defendant] seeks to elicit from [plaintiff's witness] the specific questions that [plaintiff's] counsel has asked him, or even the area of the case to which counsel directed the majority of the questions, the questions are improper as tending to disclose the mental impressions, conclusions, opinions or legal theories of [plaintiff's] attorneys." *Id.* at 519. However, the court made it clear that the work product doctrine did not protect discovery of the underlying facts of a dispute even if a deponent's response to a question was based on information provided by counsel. *Barrett* at 518; See *In re ContiCommodity Services, Inc., Securities Litigation,* 123 F.R.D. 574, 577 (N.D.Ill.1988); Wright & Miller, *Federal Practice and Procedure:* Civil § 2023 at 194 (West, 1970).

In *Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359 (E.D.Pa.1979), defendant's counsel questioned a witness for the plaintiff regarding a discussion between the deponent and plaintiff's attorney which occurred the morning before the deposition. The questions were very similar to those posed by plaintiff's counsel in this case: "What else did you and Mr. Feldman talk about today[?]" and "[T]ell me everything else you can remember that you discussed ... as it related to [plaintiff]." *Ford,* 82 F.R.D. at 359–360. In regard to these questions, the court determined:

[I]nsofar as [these questions were] directed to the substance of the witness' knowledge of relevant facts, it is clearly an acceptable line of inquiry. [H]owever, it is difficult to discern from the transcript of the deposition the exact goals defendant's counsel was pursuing. We shall therefore resolve this motion by establishing guidelines for questioning of the witness upon resumption of the deposition. Defendant's counsel shall be given free reign to inquire into the substance of the witness' knowledge concerning matters relevant to the subject matter of this action. Fed.R.Civ.P. 26(b)(1). Such inquiry may not, however, include questions that tend to elicit the specific questions posed to the witness by plaintiff's counsel, the general line of inqui-

ry pursued by plaintiff's counsel, the facts to which plaintiff's counsel appeared to attach significance, or any other matter that reveals plaintiff's counsel's mental impressions concerning this case.

*Ford,* 82 F.R.D. at 360. Plaintiff's motion to compel Smart to answer questions concerning his meetings with defense counsel is granted to the extent that plaintiff complies with the guidelines set forth in *Barrett* and *Ford.* Plaintiff may ask questions which seek to elicit any facts concerning the case which defense counsel communicated to Smart. However, any questions which tend to reveal defense counsel's mental impressions of the case are improper.

## II. Questions re: other GE executives and other corporate clients

■ During Smart's deposition, plaintiff's counsel also inquired as to the identity of Smart's other corporate clients and the counseling services he provided to the other GE executives.[1] Smart contends this information is protected by the psychologist-patient privilege under Illinois law. Although Smart denied he was a clinical psychologist during his deposition[2], Smart submitted an affidavit in response to this motion asserting he is a clinical psychologist as defined by the Illinois Clinical Psychologist Licensing Act ("Act") and therefore the psychologist-patient privilege applies to protect such disclosures. 225 ILCS 15/1 *et seq.* (formerly Ill.Ann.St. ch. 111, ¶ 5351 *et seq.*).

The parties have briefed the privilege issue under both Illinois and Ohio law. The court need not determine whether Illinois or Ohio law is applicable as the questions propounded to Smart do not violate any alleged psychologist-patient privilege under either State's law. The Illinois Clinical Psychologist Licensing Act protects "information [the psy-

chologist] may have acquired from persons consulting him in his professional capacity." 225 ILCS 15/5 (formerly Ill.Ann.St. ch. 111, ¶ 5355). The Ohio Revised Code, which defines the psychologist-patient privilege as identical to the physician-patient privilege, similarly provides that a physician shall not testify "concerning a communication made to him by his patient in that relation or his advice to his patient." Ohio Rev.Code Ann. § 2317.02(B)(1).

Plaintiff has asked Smart the nature of the services he rendered the 22 unidentified GE executives and their current employment status. These questions do not require Smart to disclose any communications obtained during the course of his consultations. Plaintiff has made it clear that he is not seeking any information concerning the individual's identity, job performance or Smart's professional evaluation of the individual. Whether Smart viewed GE or the executives as his client also does not require Smart to disclose any information obtained from the individuals with whom he consulted.

■ The psychologist-patient privilege cannot be asserted on behalf of a corporation to prevent Smart from identifying his other corporate clients. The privilege does not apply to an entity such as a corporation which cannot receive psychological counseling or psychotherapeutic treatment. Smart contends that he only discovered the identities of these corporations in the course of his consultations with their employees; therefore to disclose the corporations' identities would violate the individuals' psychologist-patient privilege. While the court believes it is extremely unlikely that this is the manner in which Smart learned which corporations had engaged his services, the court cannot judge Smart's credibility in ruling on this

---

1. Specifically, the questions were: (1) "What other corporate clients do you have other than GE?"; (2) "Were you serving as a psychotherapist to these 22 or 23 executives, GE executives?"; (3) "In the case of the other 22 executives, not Ed Russell, did you view your client as the executive or GE?"; (4) "Have you counseled any other GE executives who have then been fired?"; (5) "Have you provided counseling services of the kind that you provided to Mr. Russell to other GE executives?"; and (6) "Were any of

the other GE executives that you provided counseling terminated?"

2. Smart testified: "I'm not a therapist, not a clinical psychologist. I make it clear to everyone I deal with I am not a clinical psychologist. I don't do psychotherapy. I'm a counselor for normal people, businessmen and women, and I think that's important because I occasionally recommend that people see psychiatrists or clinical psychologists." Smart Dep. at 62.

motion. If this is indeed Smart's testimony, the court cannot compel Smart to testify otherwise.

ORDERED: Plaintiff's motion to compel answers to deposition questions propounded to Bradford D. Smart is granted pursuant to the guidelines set forth in the opinion. Pursuant to FRCP 37(a)(4), defendant GE and deponent Bradford Smart are ordered to pay plaintiff the reasonable expenses and attorneys fees incurred in obtaining this order. Plaintiff is ordered to submit his fee and expense petition by May 14, 1993; defendant and deponent's response is due May 28, 1993.